Ceonia PAYTES, Plaintiff,

v.

Gerald A. KOST, Defendant,

NATIONAL SURETY CORPORATION, Third-Party
Plaintiff-Respondent,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,
Third-Party Defendant-Appellant.

Jeanette McMILLIAN, Jake McMillian and Travelers
Plan Administrators, Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, Ceonia Paytes, Gerald A. Kost and Bulk
Commodities Transport, Inc., Defendants,

NATIONAL SURETY CORPORATION, Defendant-
Respondent,

NATIONWIDE MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 91–1556. Submitted on briefs January 10, 1992.—Decided
February 26, 1992.*

(Also reported in 482 N.W.2d 130.)

387

On behalf of the defendant-appellant and third-party defendant-appellant, the cause was submitted on the briefs of *Eric J. Van Vugt* of *Quarles & Brady* of Milwaukee.

On behalf of the defendant-respondent and third-party plaintiff-respondent, the cause was submitted on the briefs of *Jeffrey A. Schmeckpeper* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Brown, Anderson and Snyder, JJ.

BROWN, J. Nationwide Mutual Insurance Company appeals a discovery sanction assigning Nationwide primary coverage for all lawsuits arising from an auto accident. Because the statute permitting discovery sanctions limits such sanctions to the case at hand, we conclude that a discovery sanction cannot extend to liability for damages in a case subsequently consolidated with the case in which the sanction was ordered.

Ceonia Paytes and Jeanette McMillian brought separate lawsuits to recover damages they sustained when a truck driven by Gerald Kost struck the car driven by Paytes. Paytes's lawsuit was commenced prior to McMillian's. Kost's insurer was National Surety Corporation, which filed a third-party complaint in Paytes's case against Nationwide Mutual Insurance Company. Nationwide insured Bulk Commodities Transport, Inc., which leased the truck driven by Kost. National Surety sought a declaratory judgment as to which company provided primary insurance coverage.

Prior to consolidation of *Paytes* with *McMillian,* Judge Stephen A. Simanek issued a discovery sanction against Nationwide in *Paytes.* The sanction assigned Nationwide primary coverage for any damages arising from the *accident* because of Nationwide's repeated failure to comply with the statutory and court-ordered deadlines for discovery requested by National Surety. Nationwide failed to produce the complete insurance policy covering its client, Bulk Commodities. The trial court characterized the documents Nationwide did pro-

duce after several discovery requests as a "real hodgepodge."

After Judge Emmanuel Vuvunas consolidated *Paytes* and *McMillian*, he adopted Judge Simanek's order as applicable to the consolidated case. However, Judge Vuvunas indicated that he was simply reiterating the earlier order and was not issuing a new order in the consolidated case.

The consolidated case was tried before Judge Dennis Barry with Nationwide defending Kost. The jury awarded damages of $6750 to Paytes, $238,536.99 to McMillian, and $6,867.62 to McMillian's husband. Nationwide appeals two issues: first, whether the sanction order was appropriate in *Paytes;* second, whether the sanction order could extend to other cases not before Judge Simanek but which involved the same auto accident.

A circuit court's decision to impose a discovery sanction is discretionary and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has abused its discretion. *See Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 273, 470 N.W.2d 859, 863 (1991). A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Id.*

Nationwide contends that the trial court abused its discretion in *Paytes* because there is no demonstration of a rational process since the court did not state on the record a finding of bad faith or egregious conduct on the part of Nationwide. Regarding *McMillian,* Nationwide argues that the court abused its discretion by wrongly

applying the law in extending a discovery sanction to a case not before the court.

Regarding the *Paytes* case, Nationwide argues that for such a drastic sanction, which prohibited them from asserting a defense, the law requires a court to make a finding of bad faith or egregious conduct. *See Englewood Apartments Partnership v. Alexander Grant & Co.,* 119 Wis. 2d 34, 39-40, 349 N.W.2d 716, 718-19 (Ct. App. 1984). Nationwide contends that the court stated only that Nationwide was negligent, but negligence is not equivalent to bad faith or egregious conduct.

The law does not require a trial court to make an explicit finding of bad faith or egregious conduct before imposing a sanction. *Id.* at 39 n. 3, 349 N.W.2d at 719; *Monson v. Madison Family Inst.,* 162 Wis. 2d 212, 215 & n. 3, 470 N.W.2d 853, 854 (1991). It is sufficient if the record contains a reasonable basis for a determination that the sanctioned conduct was egregious and that there was no clear and justifiable excuse. *Id.* at 215, 470 N.W.2d at 854. We conclude that the record in *Paytes* contains a reasonable basis for such a determination and also for the circuit court's imposition of a sanction in that case.

National Surety served Nationwide with its first request for production of documents in the *Paytes* case on January 9, 1989. The request sought the production of the following: (1) a copy of the applicable Nationwide policies; (2) a copy of all regulatory filings made by Nationwide with respect to the policy; and (3) the underwriting file applicable to the policy. Nationwide failed to respond to the request within thirty days and did not respond to a follow-up letter sent by National Surety on February 22. National Surety pursued Nationwide's compliance with a verbal request on March 9, and

Nationwide promised to produce the documents by April 1. When no response had been served by April 14, National Surety filed a motion to compel discovery. On May 1, Nationwide filed what it characterized as "portions" of the policy and "some" of the Interstate Commerce Commission regulatory filings.

The court held a hearing on National Surety's motion to compel discovery on May 3, and on May 15 ordered Nationwide to produce the requested documents by June 5. On May 31, Nationwide wrote to National Surety stating that the documents it had previously characterized as "partial" comprised "the entire policy documents" and stated it had "no more to furnish."

On August 10, National Surety filed a motion for a sanction which would order Nationwide to assume primary coverage for all actions arising from the accident. At the motion hearing on September 1, Nationwide filed an affidavit stating that the entire policy and all filings had been produced. This affidavit purported to be based on conversations with Nationwide employees, but no affidavits were produced from employees. The court found that the entire insurance policy had not been produced. It characterized what had been produced as a "real hodgepodge." It also stated, "I don't know how I can determine who's primary if I don't have the policy." The court imposed the sanction requested by National Surety. Two months later, at the reconsideration hearing, Nationwide produced more documents, which it claimed was the full policy.

We conclude that this record provides a basis for the determination that Nationwide exhibited bad faith and egregious conduct in its handling of the discovery request. At the very least, it provides no basis for finding either good faith or a lack of willfulness. *See Furrenes v.*

*Ford Motor Co.,* 79 Wis. 2d 260, 268, 255 N.W.2d 511, 515–16 (1977).

The most basic document governing the relations between an insurance company and its client is the insurance policy. It strains credibility to believe that a company with the experience of Nationwide cannot produce such a document on immediate demand or that partial policy documents comprised the entire contractual relationship between itself and its insured. While the trial court did not make an explicit finding of bad faith, it called the documents Nationwide produced a "real hodgepodge." The court also expressed incredulity at Nationwide's protestations of justified delay when Nationwide claimed that its far-flung offices in Ohio, Oregon, and Chicago slowed down communications. The court pointed out that Nationwide had a FAX number on its letterhead. We conclude that it indicates bad faith when an insurance company ignores a discovery request for an insurance policy, then produces only portions of a policy, later claims the portion is the entire policy and, finally, after sanctions are imposed, produces still more documents that it claims is the complete policy.

Not only does the record show bad faith, it also shows egregious conduct. The basic issue in the third-party lawsuit between National Surety and Nationwide was a determination of which company provided primary coverage for the accident. There was no way for the court to determine this question on the merits without the insurance policy. The court itself explicitly stated this problem. Yet, in spite of the centrality of the insurance policy to this lawsuit, Nationwide ignored the statutory time limits for discovery, failed to keep a verbal promise to produce the documents—thereby making it

necessary for the court to allocate scarce court time to a hearing on the discovery motion—and then ignored a court order to produce the entire policy. We conclude that this is evidence of egregious conduct.

The court's statement about Nationwide's negligence does not negate a determination that Nationwide's conduct was egregious and exhibits bad faith. The negligence statement was made at the hearing for reconsideration. There, the court concluded that "negligence cannot be a basis for relief from a Court order." This was not a finding about the reason for Nationwide's failure to comply with the discovery request. Moreover, the court explicitly contrasted the negligence of a professional business client like Nationwide, which knows the rules of litigation, from the negligence of a poorly-informed client.

Therefore, we conclude that the trial court's sanction of Nationwide in *Paytes* was not an abuse of discretion. Because of the sanction order, Nationwide is liable for the damages awarded to Paytes in the consolidated trial.

Regarding the *McMillian* case, National Surety argues that Judge Simanek's sanction in the *Paytes* order was, in effect, a declaratory judgment on the issue of primary coverage. It contends that this declaratory judgment has a res judicata effect on the issue of primary coverage in *McMillian*. We disagree for two reasons. First, the sanction order was not a decision on the merits, and, thus, it cannot have a res judicata effect. Second, the statute permitting discovery sanctions limits the sanctions to the case at hand.

The sanction order cannot be considered a decision on the merits since it was Nationwide's interference with the court's ability to render a decision on the merits that justified a sanction in the first place. Judge Simanek himself stated that, without a copy of Nationwide's policy, he could not determine which insurance company offered primary coverage. As we have stated above, it is this aspect of Nationwide's conduct which leads us to the conclusion that Nationwide's action was egregious. It would be contradictory for us now to conclude that the sanction constituted a decision on the merits.

Since the sanction was before the taking of testimony and not a declaratory decision on the merits, it does not have a res judicata effect. Under the doctrine of res judicata, it is a final judgment on the merits of a prior action that is conclusive. *Stuart v. Stuart,* 140 Wis. 2d 455, 460, 410 N.W.2d 632, 635 (Ct. App. 1987), *aff'd,* 143 Wis. 2d 347, 421 N.W.2d 505 (1988).

■

Additionally, the effect of the sanction itself could not be extended to the *McMillian* case by order of Judge Simanek because the discovery sanction statute, sec. 804.12, Stats., limits a discovery sanction to the case before the court. Section 804.12(2)(a) states that "the court *in which the action is pending* may make such orders . . . as are just . . .." (Emphasis added.) We conclude that this language unambiguously limits the sanction to the case before the court.

■

Because Judge Simanek's sanction did not resolve the coverage issue as to the *McMillian* case, we remand this to the circuit court. If the circuit court finds that Nationwide was no more forthcoming about its insurance policy in *McMillian* than in *Paytes,* the court may

order that, as a sanction under sec. 804.12(2)(a), Stats., Nationwide is deemed the primary insurer. Absent that finding, the circuit court must determine which insurance company had primary coverage for damages awarded to Jeannette McMillian and her husband in the consolidated trial.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded with directions.