IN RE the COMMITMENT OF Eric PLETZ:

STATE of Wisconsin, Petitioner-Respondent,

v.

Eric PLETZ, Respondent-Appellant.†

Court of Appeals

*No. 98–2455. Oral argument May 2, 2000.—Decided September 12, 2000.*

## 2000 WI App 221

(Also reported in 619 N.W.2d 97.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael J. Backes* of *Law Offices of Michael J. Backes*, Milwaukee. There was oral argument by *Michael J. Backes*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Warren D. Weinstein*, assistant attorney general. There was oral argument by *Warren D. Weinstein*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Eric A. Pletz appeals from an order for commitment entered in a WIS. STAT. ch. 980 proceeding after a jury found he was a "sexually violent person," as that term is used in WIS. STAT. § 980.01(7).[1] He claims that: (1) the evidence was insufficient to support the jury's finding that he was a sexually violent person; (2) the jury was improperly instructed regarding the unanimity requirement; (3) the trial court erred in refusing Pletz's request to strike certain testimony as a discovery sanction; and (4) the trial court erroneously exercised its discretion in admitting hearsay. Because the evidence was sufficient to support the jury's finding; because the trial court did not erroneously exercise its discretion when it instructed the jury; because Pletz waived his right to challenge the allegedly improper testimony; and because the admission of alleged hearsay constituted harmless error, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## I. BACKGROUND

¶ 2. In January 1993, Pletz was convicted of second-degree sexual assault of a child. The victim was seven-year-old Valerie S. Pletz was sentenced to five years in prison. In August 1997, the State filed a petition, pursuant to WIS. STAT. ch. 980, alleging that Pletz had been previously convicted of a sexually violent offense, that he was within ninety days of release, and that he suffered from a mental disorder, which made it substantially probable that he would commit future acts of sexual violence.

¶ 3. A probable cause hearing was conducted, where Dr. Robert Wheeler opined that Pletz had the mental disorder, pedophilia, which predisposed him to commit acts of sexual violence and created a substantial risk that he would reoffend. The trial court found probable cause.

¶ 4. A jury trial was held in February 1998. The State presented testimony from probation officer Michele Mitchem and two expert psychologists, Dr. Wheeler and Dr. Craig Monroe. Both psychologists testified that Pletz suffered from pedophilia and was substantially likely to reoffend. The defense presented testimony from two expert psychologists, Dr. Michael Kotkin and Dr. Diane Lytton. The defense psychologists testified that Pletz was not a pedophile but, rather, that he suffered from pervasive developmental disorder, which did not qualify as a mental disorder defined in WIS. STAT. § 980.01(2). The defense psychologists opined that Pletz's mental disorder was not one that made it substantially probable that he would reoffend.

¶ 5. The jury found that Pletz was a "sexually violent person." The trial court ordered that Pletz be

committed to institutional care in a secure mental health facility. Pletz now appeals.

## II. DISCUSSION

*A. Insufficient Evidence.*

¶ 6. Pletz claims that the evidence was insufficient to support the jury's finding that he was a "sexually violent person." We disagree.

¶ 7. Our standard of review on this issue requires us to reverse only if the evidence, viewed in the light most favorable to the commitment order, is so insufficient in probative value and force that it can be said, as a matter of law, that no trier of fact, acting reasonably, could have found the elements necessary for commitment beyond a reasonable doubt. *See State v. Kienitz,* 227 Wis. 2d 423, 434, 597 N.W.2d 712 (1999).

¶ 8. A "sexually violent person" is:

> [A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

WIS. STAT. § 980.01(7). Pletz does not dispute that he satisfies the first portion of this definition—that he is a person who has been convicted of a sexually violent offense. He quarrels, however, with the second portion of the definition—that he has a mental disorder that makes it substantially probable that he will reoffend.

55

He argues that there is insufficient evidence to support this portion of the definition.

¶ 9. Pletz argues that his expert psychologists, Dr. Kotkin and Dr. Lytton, were more credible because they both had met with him, and Dr. Lytton has had more experience in diagnosing disabled persons. He also contends that because this case was tried before the courts defined the term "substantially probable" to mean "much more likely than not" to occur, *State v. Curiel*, 227 Wis. 2d 389, 401, 597 N.W.2d 697 (1999), we should also examine the testimony of the experts to determine whether their testimony was proffered using the proper standard. We reject Pletz's contentions and conclude that there is sufficient evidence in the record to support the jury's verdict.

¶ 10. The State presented the testimony of probation agent Mitchem. She testified to the chronology of Pletz's criminal offenses. On September 5, 1989, Pletz assaulted Heather R. On September 30, 1989, Pletz assaulted Tammy M. In December 1989, Pletz was adjudicated delinquent for the former offense and the latter offense was read-in for sentencing purposes. Pletz was discharged in June 1992 and, in August 1992, he was arrested for the sexual assault of Valerie. Mitchem also testified that Pletz admitted he had a problem, needed treatment and could not control himself.

¶ 11. Dr. Wheeler testified that he conducted a ch. 980 evaluation of Pletz in the spring of 1996, which involved reviewing the entire file, talking to psychologists at the institutions that had housed Pletz, reviewing clinical reports, and interviewing Pletz. Dr. Wheeler diagnosed Pletz as suffering from pedophilia, alcohol abuse, borderline intellectual functioning, and anti-personality disorder. Dr. Wheeler defined

pedophilia for the jury and testified that the assaults of Heather and Valerie satisfied the definition. Dr. Wheeler also reviewed for the jury various reports in Pletz's file from treating psychologists, pointing out that only one of the many other psychologists diagnosed him as suffering from pervasive developmental disorder. The sole psychologist who reached that conclusion indicated a "probable pervasive developmental disorder," but also opined that Pletz possibly suffered from pedophilia.

¶ 12. Dr. Wheeler also testified that there was a substantial probability that Pletz would reoffend if released because he refused to participate in treatment. Dr. Wheeler defined substantial probability as "ample or considerable probability."

¶ 13. The State also called Dr. Monroe to testify. Dr. Monroe diagnosed Pletz as suffering from pedophilia, alcohol abuse, and a borderline level of intelligence. Dr. Monroe based his evaluation on a review of the file and testified that it was substantially probable that Pletz, who refused to participate in treatment, would reoffend if released. Dr. Monroe indicated that he understood the term substantially probable to mean, "much more likely than not."

¶ 14. This evidence is sufficient to support the jury's verdict. Although Dr. Wheeler did not use the precise definition of substantial probability set forth in *Curiel*, this does not affect our analysis. We must view the evidence in the light most favorable to the commitment order. Under this standard of review, we cannot say that *no trier of fact, acting reasonably*, could find that Pletz was a sexually violent person after hearing the testimony of these two psychologists.

¶ 15.  Pletz argues that the two psychologists who testified on his behalf offered more credible testimony, and that neither one diagnosed Pletz as suffering from pedophilia or any other mental disorder which would satisfy the definition of a sexually violent person. The fact that this case presented a "battle of the experts" does not alter our conclusion that the jury was presented with sufficient evidence to support the verdict it reached. The jury assessed the credibility of the expert witnesses and reached a conclusion adverse to Pletz. The testimony presented by the State's witnesses is sufficient to uphold the jury's verdict despite the fact that the defense presented testimony from expert witnesses who disagreed.

## B.  Unanimity Instruction.

¶ 16.  Pletz next contends that the trial court erred when it instructed the jury with regard to unanimity. At the close of evidence, the trial court charged the jury with the following pertinent instructions:

> The second fact that must be established is that Eric Pletz has a mental disorder. Mental disorder means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence. The condition must be a clinically significant behavioral or psychological symptom or pattern that occurs in an individual and must be associated with a current state of distress or impaired functioning or with a significant risk of pain, death or loss of freedom. Disorders do not include merely deviant behavior that conflict[s] with prevailing societal mores.

You are not bound by medical labels, definitions or conclusions as to what is or is not a mental disorder. Acts of sexual violence means acts which would constitute sexually violent offenses. For purpose of this trial, a sexually violent offense means the committing, solicitation, conspiracy or attempt to commit any of the following offenses: first degree sexual assault of a child, second degree sexual assault of a child, child enticement, first degree sexual assault, and second degree sexual assault.

Not all persons who commit sexually violent crimes can be diagnosed as suffering from mental disorder nor are all persons with a mental disorder predisposed to commit sexually violent offenses.

Information has been submitted that Eric Pletz committed other sexually violent offenses before committing the second degree sexual[ ] assault of a child for which he was convicted in 1993. This evidence alone is not sufficient to establish that Eric Pletz has a mental disorder. Before you may find that Eric Pletz has a mental disorder, you must be satisfied beyond a reasonable doubt from all the evidence in this case.

The third fact that must be established is that Eric Pletz is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence.

If you are satisfied beyond a reasonable doubt that Eric Pletz has been convicted of a sexually violent offense, that he has a mental disorder, and that he is dangerous to others because the mental disorder creates a substantial probability that he will engage in acts of sexual violence, you should find that Eric Pletz is a sexually violent person.

If you are not so satisfied, you must not find that Eric Pletz is a sexually violent person.

In reaching your verdict, examine the evidence with care and caution. Act with judgment, reason, and prudence. The law presumes that Eric Pletz is not a sexually violent person. Furthermore, Eric Pletz does not have to prove anything. The burden is on the State to convince you beyond a reasonable doubt that Eric Pletz is a sexually violent person.

. . . .

This is a Chapter 980 case. Therefore, before the jury may return a verdict which may legally be received, such verdict must be reached unanimously. In a Chapter 980 case, all twelve jurors must agree in order to arrive at a verdict.

During deliberations, the jury sent a question to the trial court asking, "Do we need to decide which specific mental disorder Mr. Pletz has in order to decide whether or not it predisposes him to sexual violent offense?" The trial court answered the question:

The jury must be unanimous that Eric Pletz has a "Mental Disorder" as that term is defined in the jury instruction. You are not bound by medical labels, definitions or conclusions as to what is or is not a mental disorder. Further, although you must all agree that Eric Pletz has a "Mental Disorder" you need not be unanimous as to which "Mental Disorder."

¶ 17.   Pletz argues the jury's question implied that some jurors believed the State's experts who diagnosed Pletz with pedophilia, and that other jurors believed the defense experts who diagnosed Pletz with pervasive developmental disorder. Pletz contends that the trial court's answer to the question violated his rights because it allowed some of the jurors to erroneously conclude that pervasive developmental disorder

can support a finding that he was a sexually violent person. We are not persuaded. A trial court is afforded great latitude when giving jury instructions. *See State v. Lenarchick*, 74 Wis. 2d 425, 455, 247 N.W.2d 80 (1976). We review challenges to jury instructions under the erroneous exercise of discretion standard. *See id.*

¶ 18.   The jury must agree that Pletz had a mental disorder that predisposes him to commit acts of sexual violence. The State argues that the specific mental disorder is akin to the specific way in which one commits a crime; it is not an element of the crime. We agree. Wisconsin has already determined that unanimity is not required with regard to the mode of committing robbery, *see Manson v. State*, 101 Wis. 2d 413, 304 N.W.2d 729 (1981) (because robbery statute creates only a single offense with alternative modes of commission, jury unanimity as to what alternative mode used is not required), or the manner in which a defendant commits a crime, *see State v. Holland*, 91 Wis. 2d 134, 144, 280 N.W.2d 288 (1979) (jury unanimity is not required with respect to the manner in which the defendant participates in the crime: direct commission, or aiding and abetting).

¶ 19.   "Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *Holland*, 91 Wis. 2d at 143. Although ch. 980 cases do not involve "guilt or innocence" or the "ways in which the crime can be committed," the general unanimity principle applies. Here, the jury must unanimously agree that Pletz suffers from a "mental disorder" that predisposes him to commit acts of sexual violence. *See State v. Adams*, 223

Wis. 2d 60, 67–71, 588 N.W.2d 336 (Ct. App. 1998). The statute and the jury instructions repeatedly refer to "a mental disorder" without requiring its exact definition or specification. *See id.* The jury was instructed that it must find that Pletz suffers from a mental disorder that predisposes him to engage in sexually violent acts. The jury is presumed to follow the instructions. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). As long as all of the jurors agreed that Pletz suffered from such mental disease, unanimity requirements are satisfied, even if jurors disagree as to which mental disease predisposes the defendant to recidivism. *See generally Adams*, 223 Wis. 2d at 67–71. Accordingly, we conclude that the trial court's instruction to the jury here did not violate the unanimity requirement.

### C. Expert Testimony.

¶ 20.   Pletz next contends that the trial court erroneously exercised its discretion in allowing testimony from the State's expert, which was not disclosed to him during discovery. Pletz argues that the trial court should have struck Dr. Monroe's trial testimony regarding a psychological screening instrument called the R.R.A.S.O.R.,[2] which was used to evaluate Pletz, because this evaluation was not disclosed during Dr. Monroe's deposition or in his report. The State responded that it was unaware of Dr. Monroe's R.R.A.S.O.R. evaluation until the day Dr. Monroe

---

[2] R.R.A.S.O.R. is the acronym for Rapid Risk Assessment for Sexual Offense Recidivism. The R.R.A.S.O.R. test is a statistical profile that separates low-risk offenders from high-risk offenders in terms of recidivism, in order to estimate which individuals are likely to reoffend.

arrived at the courthouse to testify, and that Dr. Monroe explained he had not completed this analysis until after his deposition. The trial court found, therefore, that the State did not violate any discovery rules. The State also argues that Pletz's objection to Dr. Monroe's R.R.A.S.O.R testimony was untimely because he did not object and move to strike at the time the challenged testimony began. Rather, Pletz waited until the following day to object to this evidence.

¶ 21.   A trial court has discretion to impose sanctions for discovery abuses. *See Paytes v. Kost*, 167 Wis. 2d 387, 393, 482 N.W.2d 130 (Ct. App. 1992). An objection must be made to the introduction of evidence as soon as a party is aware of its objectionable nature. *See Caccitolo v. State*, 69 Wis. 2d 102, 113, 230 N.W.2d 139 (1975). If a party fails to make a timely objection, the party waives his or her right to contest that evidence. *See id.* We conclude that, under the facts presented here, the State did not commit any discovery violation; and, even if the State had violated the supplemental discovery rules, Pletz waived his right to object to Dr. Monroe's testimony on the R.R.A.S.O.R. test when he failed to immediately object and seek an adjournment.

¶ 22.   It is undisputed that this information was not available at the time of Dr. Monroe's deposition, and that the State did not know of the new information until the day Dr. Monroe was to testify. The State immediately advised the defense of the new information and provided the defense with copies of the written R.R.A.S.O.R. scoring, together with Dr. Monroe's conclusions.

¶ 23.   Dr. Monroe began his testimony at approximately 4:00 p.m. on February 17, 1997, and testified until approximately 5:30 p.m. that day. Although Dr. Monroe testified with regard to the new information,

Pletz made no objection. Pletz did not object to, or raise the issue of, a discovery violation until the following morning. At that time, Pletz argued that the State failed to supplement Dr. Monroe's deposition with the new information and that, as a sanction for the violation, Pletz requested that the court strike Dr. Monroe's testimony regarding the new information. The trial court found that there was no discovery violation and it denied Pletz's request to strike the testimony.

¶ 24. WISCONSIN STAT. § 804.01(5)(b) requires a party to "seasonably [supplement] a prior response if the party obtains information . . . [that] the party knows . . . was incorrect when made, or . . . knows that the response though correct when made is no longer true." During Dr. Monroe's deposition, Pletz inquired about whether any psychological testing had been performed and whether any actuarial testing had been conducted. Dr. Monroe testified during the deposition that he had not performed any such tests. The reason Dr. Monroe did not refer to R.R.A.S.O.R. during his deposition, is because the scientific study disclosing this profile was published in psychological literature after Dr. Monroe's deposition. In other words, the R.R.A.S.O.R. analysis only became available subsequent to Dr. Monroe's deposition, and Dr. Monroe did not apply this analysis to Pletz until shortly before he testified.

■

¶ 25. Under such circumstances, we agree with the trial court that the information did not constitute a discovery violation. The challenged information was new, and the State disclosed the information to Pletz as soon as it discovered it. Because there was no discovery violation, the trial court properly denied Pletz's request

to strike Dr. Monroe's testimony regarding the R.R.A.S.O.R. analysis.

¶ 26.  In addition, we conclude that Pletz waived his right to appellate review of this evidence by failing to make a timely objection. Pletz was provided with the new information before Dr. Monroe's testimony. No objection was made before Dr. Monroe's testimony or during the discussion of the R.R.A.S.O.R. analysis. In addition, when testimony for the day had been completed and the jury was dismissed, the trial court asked counsel if there were any additional matters that needed to be addressed. At this time, Pletz's counsel placed on the record his objection to a separate portion of Dr. Monroe's testimony, which is discussed in the next section of this opinion. Still, no objection was raised regarding the R.R.A.S.O.R. testimony. It was not until the following morning that Pletz raised the issue of a discovery violation for failing to "seasonably" disclose the R.R.A.S.O.R. analysis. We conclude that, under the circumstances, the objection was not timely and the trial court was precluded from granting appropriate relief to Pletz.[3]

---

[3] Here, if any breach of disclosure had occurred, the appropriate remedy would have been the granting of an adjournment to allow Pletz to investigate, research and consult with his experts to rebut the R.R.A.S.O.R. testimony newly proffered by Dr. Monroe. This remedy was neither requested by counsel, nor could it have been effectively employed because counsel waited too long to object. *See Wold v. State*, 57 Wis. 2d 344, 351, 204 N.W.2d 482 (1973) ("The penalty for breach of disclosure should fit the nature of the proffered evidence and remove any harmful effect on the defendant.").

*D. Admission of Hearsay.*

¶ 27.   Pletz also contends that the trial court erroneously exercised its discretion when it allowed into evidence letters that Dr. Monroe received from members of the DSM-IV[4] committee. The State responds that these letters were properly admitted because Dr. Monroe reasonably relied on the letters in formulating his opinion.

¶ 28.   The two letters were replies to a letter authored by Dr. Monroe's partner, Dr. Doren. Dr. Doren's letter posed the question to the DSM-IV committee regarding whether a sexual assault committed as a juvenile constitutes evidence of pedophilia when the juvenile commits a second assault after attaining an age greater than sixteen years. The letters were pertinent to this case because Pletz committed two of the three sexual assaults when he was fourteen years old. There was a dispute at trial as to whether the juvenile incidents could be relied on in diagnosing Pletz with pedophilia because one of the diagnostic criteria for pedophilia generally requires that the perpetrator be older than sixteen years.

¶ 29.   Pletz argues that the letters admitted are not a type reasonably relied upon by an expert and therefore constituted inadmissible hearsay. Our review on evidentiary issues is deferential and we will not reverse a trial court's decision unless it erroneously exercised its discretion. *See State v. Peters*, 192 Wis. 2d 674, 685, 534 N.W.2d 867 (Ct. App. 1995). WISCONSIN STAT. § 907.03 permits an expert to testify regarding

---

[4] The DSM-IV is the Diagnostic and Statistical Manual and is published by the American Psychiatric Association. It is widely used to diagnose psychiatric illnesses.

the bases of his or her opinion if the bases are of "a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Id.* The letters at issue here are not "a type reasonably relied upon by experts in the particular field." The DSM-IV is the definitive reference for mental health professionals, and is the product of numerous professional experts in the field who have come together to draft and revise diagnostic criteria to reflect the consensus of the profession. The letters relied on here, although authored by members of the DSM-IV committee, are isolated opinions given in response to hypothetical questions. Therefore, we conclude that the letters do not satisfy the standard enunciated above, and therefore should not have been admitted. However, we conclude that admission of the two letters constituted harmless error.

¶ 30. The standard of review under which we determine harmless error "is not whether some harm has resulted but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than the purportedly inadmissible evidence, that would convict the defendant beyond a reasonable doubt." *State v. Van Straten*, 140 Wis. 2d 306, 318–19, 409 N.W.2d 448 (Ct. App. 1987). There is sufficient evidence in the record here to sustain the jury's determination that Pletz is a sexually violent person, even without the inadmissible letters.

¶ 31. In order to so find, the jury was required to conclude that: (1) Pletz had been convicted of a sexually violent offense; (2) Pletz had a requisite mental disorder; and (3) Pletz was dangerous to others because the mental disorder created a substantial probability that he would engage in acts of sexual violence. The letters address the issue of whether Pletz's first offense quali-

fied to satisfy the pedophile diagnosis because the first offense occurred before he reached sixteen years of age. The first offense related to the sexual assault of four-year-old Heather R. when Pletz was fourteen years old. The DSM-IV manual suggests that for sexual assaults to support a diagnosis of pedophilia, the offender should be at least sixteen years of age, and the victim has to be at least five years younger. Pletz argued at trial that his first offense did not qualify because he was not yet sixteen years old. The letters, however, were not the only evidence to refute Pletz's position.

¶ 32.   Dr. Wheeler testified that the first offense qualified for the pedophile diagnosis. Dr. Kotkin, a witness called by Pletz, agreed that the first offense qualified for the pedophile diagnosis. Accordingly, the letters from two additional psychologists, which confirm that the pre-sixteen offense qualifies as a pedophilic incident, were simply cumulative to the actual testimony of expert witnesses at trial. Thus, even if the letters were excluded, the jury would still have been able to find that Pletz was a sexually violent person beyond a reasonable doubt.

*By the Court.*—Order affirmed.