In re the Commitment of John Lee Laxton:

State of Wisconsin, Petitioner-Respondent,

v.

John Lee Laxton, Respondent-Appellant-Petitioner.

Supreme Court

*No. 99–3164. Oral argument May 30, 2002.—Decided July 1, 2002.*

## 2002 WI 82

(Also reported in 647 N.W.2d 784.)

186

187

For the respondent-appellant-petitioner there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the petitioner-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This case involves a constitutional challenge to Wis. Stat. ch. 980 (1997–98)[1], the sexually violent person commitment law. Petitioner John Lee Laxton, who was involuntarily committed to institutional care under ch. 980, argues that the statute is unconstitutional because it violates substantive due process guarantees in the United

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

States and Wisconsin Constitutions. Specifically, Laxton argues that ch. 980 is unconstitutional because, in determining that an individual is sexually violent and subject to civil commitment, the provisions of the chapter do not require a jury to determine that the person has a mental disorder that involves serious difficulty in controlling his or her behavior. While he no longer argues for a separate finding on the control issue, Laxton claims that the requisite link or nexus is missing.[2]

¶ 2. We conclude that Wis. Stat. ch. 980 is constitutional. Based on recent precedent addressing due process challenges to ch. 980, and particularly the United States Supreme Court's guidance in *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867 (2002), which addressed a similar due process issue, we conclude that such a civil commitment does not require a separate finding that the individual's mental disorder involves serious difficulty for such person to control his or her behavior. The requisite proof of lack of control is established when the nexus between such person's mental disorder and dangerousness has been established. Specifically, we conclude that evidence showing that the person's mental disorder predisposes such individual to engage in acts of sexual violence, and evidence establishing a substantial probability that such person will again commit such acts, necessarily and implicitly includes proof that such person's mental

---

[2] We note that originally Laxton argued in his brief that *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867 (2002), requires a separate factual finding that the subject of the petition has a mental disorder that makes it "seriously difficult" to control his or her behavior. At oral argument Laxton's counsel clarified that she was no longer arguing, on Laxton's behalf, that a separate factual determination is required.

disorder involves serious difficulty in controlling his or her behavior. Such evidence distinguishes such a person from the dangerous but typical recidivist. We further conclude that the jury instructions at Laxton's trial were proper and did not deprive him of due process of law, and we reject his argument requesting a new trial on the basis that the real controversy was not fully and fairly tried.

I

¶ 3. The relevant facts are not in dispute. In 1987, John Lee Laxton was convicted of three counts of second-degree sexual assault and two counts of child abduction[3] in Milwaukee County Circuit Court.[4] He was sentenced to eleven years in prison, where he remained until he was paroled in May of 1994. Five months later, in October of 1994, Laxton was arrested for window peeping at two young girls. As a result, Laxton's parole was revoked and he was convicted of disorderly conduct.

¶ 4. On September 11, 1998, shortly before Laxton would be released from prison, the State filed a petition seeking to commit Laxton as a sexually violent person under Wis. Stat. ch. 980. A jury trial was held in Milwaukee County Circuit Court on July 19 through 22, 1999. During trial, several experts testified to diagnosing Laxton with pedophilia, voyeurism, and/or

---

[3] Former Wis. Stat. § 940.32 (1985–1986) related to child abduction and was repealed effective July 1, 1989. *See* 1987 Act 332, § 36.

[4] It is not necessary to discuss the factual basis of these convictions in detail. We note, however, that the victims were two 12 year-old girls, and that the assaults occurred in two separate incidents on the same morning, approximately thirty minutes apart.

paraphilia, not otherwise specified.[5] When giving the jury instructions, the circuit court judge, the Honorable Mel Flanagan, presiding, explained that in order to find that Laxton is a sexually violent person, the State must prove three facts beyond a reasonable doubt: (1) "[Laxton] has been convicted of a sexually violent offense;" (2) "[Laxton] has a mental disorder;" and (3) "[Laxton] is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence." With regard to the last fact, the circuit court judge also instructed, "A substantial probability means much more likely than not." The court further instructed the jury on the meaning of acts of sexual violence: "Acts of sexual violence means acts which would constitute sexually violent offenses. Acts of window peeping or exposure of the penis, absent any other behavior toward another person, do not alone constitute sexually violent offenses under chapter 980." Laxton's counsel did not object to the circuit court's final jury instructions. The jury found that Laxton was a sexually violent person.

¶ 5. After the verdict, Laxton filed a postconviction motion, arguing in part that the jury was improperly instructed on the meaning of sexually violent offenses. The circuit court denied Laxton's postconviction motion, entered judgment on the jury's verdict, and Laxton was then committed to the Wisconsin Resource Center pursuant to Wis. Stat. § 980.06(2)[6].

---

[5] We recognize that not all of the experts agreed as to Laxton's diagnoses, specifically, pedophilia. The State's two experts, Dr. Timothy McGuire and Dr. Sheila Fields, both testified that Laxton's mental disorders affected his emotional and volitional capacity.

[6] Wisconsin Stat. § 980.06(2)(a) states:

¶ 6. Laxton appealed from the judgment and or-der of commitment, arguing that the jury instruction was inappropriate and that in the interest of justice he should receive a new trial. The Court of Appeals, District I, summarily affirmed the circuit court's deci-sion. The court concluded that Laxton failed to preserve his objection to the jury instruction at trial, and that no grounds exist for a discretionary reversal.

¶ 7. Laxton now seeks review in this court. In addition to reviewing the court of appeals' decision, however, we instructed the parties "to address whether [Laxton's] due process rights were violated because there was no jury determination regarding his level of volitional control." *State v. Laxton,* No. 99–3164 (order dated January 29, 2002).

## II

¶ 8. We first address Laxton's constitutional chal-lenge to Wis. Stat. ch. 980. The constitutionality of a statute is a question of law that this court addresses independently, while benefiting from the analyses of the circuit court and court of appeals. *State v. Post,* 197 Wis. 2d 279, 301, 541 N.W.2d 115 (1995). We presume all legislative enactments are constitutional, and resolve

---

The court shall enter an initial commitment order under this section pursuant to a hearing held as soon as practicable after the judgment that the person who is the subject of a petition under s. 980.02 is a sexually violent person is entered. If the court lacks sufficient information to make the determination required by par. (b) immediately after trial, it may adjourn the hearing and order the department to conduct a predisposition investigation using the procedure in s. 972.15 or a supplementary mental examination, or both, to assist the court in framing the commitment order. A supplementary mental examination under this paragraph shall be conducted in accordance with s. 971.17(2)(b) to (f).

doubts in favor of the constitutionality of the statute at issue. *State v. Randall,* 192 Wis. 2d 800, 824, 532 N.W.2d 94 (1995). The challenger bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Id.*

¶ 9. In order to commit an individual under Wis. Stat. ch. 980, a jury must find that the individual is a sexually violent person.

> "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

Wis. Stat. § 980.01(7). Further, ch. 980 defines "mental disorder" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." § 980.01(2).

¶ 10. Laxton asserts that Wis. Stat. ch. 980 violates substantive due process guarantees in the United States Constitution, Amendment V and XIV, and the Wisconsin Constitution, Article I, § 8.[7] This case does

---

[7] Although Laxton relies on both the United States and Wisconsin Constitutions, he does not explain how the constitutional protections differ. The United States and Wisconsin Constitutions provide similar due process guarantees; therefore, we do not distinguish between the constitutional protections in this case.

Amendment V to the United States Constitution states in relevant part:

not present the first due process challenge to ch. 980 or a similar sexually violent person commitment law. Since both parties rely heavily on a handful of Wisconsin cases that have previously addressed constitutional challenges to ch. 980, and United States Supreme Court cases addressing the constitutionality of a similar statute in Kansas, we first use those cases to provide the context within which this substantive due process challenge will be reviewed.[8]

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Amendment XIV to the United States Constitution states in relevant part:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article I, Section 8 of the Wisconsin Constitution states in relevant part: "No person may be held to answer for a criminal offense without due process of law, and no person for the same offense may be put twice in jeopardy of punishment, nor may be compelled in any criminal case to be a witness against himself or herself."

[8] The Due Process Clauses of the United States and Wisconsin Constitutions protect both substantive and procedural due process rights. Substantive due process prevents the government from engaging in conduct that "shocks the conscience."

¶ 11. This court first addressed substantive due process challenges to Wis. Stat. ch. 980 in *State v. Post,* 197 Wis. 2d 279, 541 N.W.2d 115 (1995).[9] We looked at several characteristics of ch. 980 and concluded that the statute was constitutional. *Id.* at 303. First, we concluded that the definition and use of the term "mental disorder" is sufficiently tailored to satisfy the mental condition component required by substantive due process. *Id.* The key to constitutionality is that the definition of mental disorder requires a nexus: "[P]ersons will not fall within chapter 980's reach unless they are diagnosed with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence." *Id.* at 306. Second, we concluded that treatment is a bona fide objective and goal of ch. 980. *Id.* at 311. Third,

---

*United States v. Salerno,* 481 U.S. 739, 746 (1987). "Governmental action violates 'substantive due process' when the action in question, while adhering to the forms of law, unjustifiably abridges the Constitution's fundamental constraints upon the content of what government may do to people under the guise of the law." *Reginald D. v. State,* 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995). Procedural due process further requires that even though "government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno,* 481 U.S. at 746. Here, Laxton argues that Wis. Stat. ch. 980 violates substantive due process.

[9] The companion case, *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995), addressed whether Wis. Stat. ch. 980 violated the Double Jeopardy or Ex Post Facto Clauses of the United States and Wisconsin Constitutions. We concluded that ch. 980 did not violate either constitutional provision because the statute was intended primarily to protect the public and provide concentrated treatment rather than punishment. Furthermore, we note that in *State v. Post,* 197 Wis. 2d 279, 541 N.W.2d 115 (1995), the court also concluded that ch. 980 does not violate equal protection guarantees.

we concluded that the statute's definition of dangerousness—that a mental disorder makes it substantially probable that the person will engage in acts of sexual violence—is constitutionally sound. *Id.* at 313. Finally, we concluded that the nature and duration of commitment is consistent with the legislature's purposes of protecting the community and providing treatment for persons suffering from mental disorders that predispose them to commit sexually violent acts. *Id.*

¶ 12. After *Post,* Wis. Stat. ch. 980 was amended, *see* 1999 Wis. Act 9, §§ 3216d-3239d, and in an opinion of today's date, we again uphold the constitutionality of ch. 980 in the face of due process challenges to the revised statute. *State v. Rachel,* 2002 WI 81, ¶ 70, 254 Wis. 2d 215, 647 N.W.2d 762.[10] The amendments largely focused on limiting a ch. 980 respondent's ability to seek supervised release as an alternative to institutional commitment. *Id.* at ¶ 7. We conclude in *Rachel* that ch. 980, as amended, continues to serve the legitimate and compelling state interests of providing treatment to the dangerously mentally ill and protecting the public from the dangerously mentally ill; therefore, it is still narrowly tailored to meet those interests and does not violate substantive due process. *Id.* at ¶ 68.

¶ 13. In addition to *Post* and *Rachel,* two United States Supreme Court cases upholding the constitutionality of the Kansas Sexually Violent Predator Act, Kan. Stat. Ann. § 59–29a02 (1994) (hereinafter the Kansas Act), help to frame Laxton's substantive due process challenge here. The Kansas Act establishes procedures for the civil commitment of persons who, due to a

---

[10] We note that like *Post, State v. Rachel,* 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762, addresses double jeopardy and ex post facto challenges in addition to the substantive due process challenge.

mental abnormality or a personality disorder, are likely to engage in acts of sexual violence.

¶ 14. In *Kansas v. Hendricks,* 521 U.S. 346 (1997), the United States Supreme Court concluded that the Kansas Act's definition of "mental abnormality"[11] satisfies due process requirements. The Court rejected Hendricks' argument that a finding of "mental illness" is a prerequisite for commitment, noting that the Court "ha[s] never required state legislatures to adopt any particular nomenclature in drafting civil commitment statutes." *Id.* at 359. Significantly, commitment under the Kansas Act requires the state to prove dangerousness, coupled with proof of a mental abnormality, which the Court concluded is sufficient for due process purposes. *Id.* at 360. The Court also noted that in the case at hand, Hendricks was diagnosed as a pedophile, which qualifies as a mental abnormality, and that Hendricks conceded a lack of volitional control. *Id.*

¶ 15. Recently, the United States Supreme Court revisited the Kansas Act in *Kansas v. Crane,* 534 U.S. 407, 122 S. Ct. 867 (2002). The Court, again, upheld the Kansas Act under a due process challenge, focusing largely on the requisite proof of lack of volitional control required for civil commitment of a sexually violent person. The Kansas Supreme Court had interpreted *Hendricks* as constitutionally requiring a finding that the defendant cannot control his dangerous behav-

---

[11] A "mental abnormality" was defined, in turn, as a "congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others."

*Kansas v. Hendricks,* 521 U.S. 346, 352 (1997) (quoting Kan. Stat. Ann. § 59–29a02(b)).

ior. *In re Crane,* 7 P.3d 285 (Kan. 2000). On review, the Court vacated that decision and concluded that "lack of control" is not given a narrow or technical meaning. *Crane,* 534 U.S. at 411, 122 S. Ct. at 870. Instead, the focus is on the nexus between the mental abnormality and the level of dangerousness, and whether those requirements are sufficient to distinguish a dangerous sexual offender from the dangerous but typical recidivist.

> [W]e recognize that in cases where lack of control is at issue, "inability to control behavior" will not be demonstrable with mathematical precision. *It is enough to say that there must be proof of serious difficulty in controlling behavior. And this,* when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, *must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist* convicted in an ordinary criminal case.

*Id.* (emphasis added). The Court noted that in *Hendricks,* and as required under the Kansas Act, the presence of a mental disorder—under which a "critical distinguishing feature" consisted of a serious lack of ability to control behavior—draws the line between a dangerous sexual offender subject to civil commitment and the typical recidivist. *Id.*

¶ 16. In drawing this conclusion, the Court specifically rejected an "absolutist approach" and commented that the Court provides constitutional guidance but not bright-line rules in the area of mental illness. *Id.* The court agreed that *Hendricks* does not set forth a requirement of "*total* or *complete* lack of control," but also that a dangerous sexual offender cannot be com-

mitted "without *any* lack-of-control determination." *Id.* (emphasis in original). Furthermore, the Court reinforced the conclusion that in the area of mental illness, constitutional safeguards are "not always best enforced through precise bright-line rules." *Id.* at 871. The Court noted, "States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment." *Id.* (citing *Hendricks,* 521 U.S. at 359; *id.* at 374–375 (Breyer, J., dissenting)). Moreover, the Court commented that in providing constitutional guidance in the area of mental illness, the Court has done so "by proceeding deliberately and contextually, elaborating generally stated constitutional standards and objectives as specific circumstances require." *Crane,* 534 U.S. at 414, 122 S.Ct. at 871.

### III

¶ 17. We now turn to Laxton's argument that ch. 980 violates his right to the due process of law. Laxton asserts that under *Crane,* involuntary civil commitment requires proof that the subject of the petition has serious difficulty in controlling his behavior, and that as written, ch. 980 falls short of that constitutional substantive due process requirement. To state this another way, Laxton claims that ch. 980 is unconstitutional because it fails to narrow the class of persons eligible for commitment to those who have serious difficulty in controlling their dangerousness in a manner distinct from the typical recidivist.

¶ 18. Although Laxton does not argue that a jury is required to make a separate factual finding regarding the individual's lack of volitional control, he asserts that the statutory definitions of "mental disorder" and "sexually violent person" in Wis. Stat. ch. 980 fail to contain

the requisite link to an individual's serious difficulty in controlling behavior. He argues that "mental disorder," as defined, does not require a link between the mental disorder and the person's behavioral control. With regard to the definition of sexually violent person, Laxton claims that finding a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence is not the equivalent of a determination that the individual has serious difficulty controlling behavior.[12] Moreover, even if substantial probability and serious difficulty could be equated, Laxton asserts that nothing in the statute requires a link between the danger of re-offending to the person's serious difficulty in controlling behavior.

¶ 19. Finally, Laxton argues that the court should not interpret ch. 980 as implicitly containing a "serious difficulty requirement." Rather, Laxton contends that the statute could be easily cured of the constitutional error by explicitly incorporating "serious difficulty in controlling behavior" into the definition of mental disorder or sexually violent person, but it is the role of the legislature, not the court, to do so.

---

[12] Laxton argues that "substantial probability" is not constitutionally sufficient because the finding of dangerousness is not directed to the person's present serious difficulty in controlling behavior. We reject this argument. Wisconsin ch. 980 focuses on such person's present mental disorder and links the mental disorder with the requisite level of dangerousness—a substantial probability that he or she will engage in acts of sexual violence. Consequently, dangerous individuals are subject to civil commitment under ch. 980 because of a present mental disorder involving serious difficulty controlling his or her behavior.

¶ 20. The State disagrees with Laxton and argues that Wis. Stat. ch. 980, as written, implicitly requires proof that the respondent has serious difficulty controlling his behavior. According to the State, due process guarantees are satisfied because, based on the proof required for a jury to determine that an individual is a sexually violent person under Wis. Stat. § 980.01(7), the State necessarily must prove that the person's control is sufficiently impaired to justify involuntary commitment. Pursuant to the definitions of "mental disorder" and "sexually violent person," ch. 980 requires proof that the person has a qualifying mental condition, that the mental condition affects his volitional or emotional capacity, and that the person's mental disorder makes it substantially probable that the person will engage in acts of sexual violence. The State contends that it is evident from the proof required to establish that an individual is sexually violent, that the statutory terms necessarily include serious difficulty in the ability to control dangerous behavior. Simply stated, the State argues that the concept of control is necessarily encompassed by the statutory criteria of a mental disorder and dangerousness.

¶ 21. We agree. Civil commitment under Wis. Stat. ch. 980 does not require a separate factual finding regarding the individual's serious difficulty in controlling behavior. In *Crane,* the United States Supreme Court rejected an absolutist approach, stating that "the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." 534 U.S. at 413, 122 S. Ct. at 871. *Crane* holds that there must be proof of a mental disorder and a link between the mental disorder and the individual's lack of control.

Significantly, however, the Court recognized that lack of control is not "demonstrable with mathematical precision." 534 U.S. at 413, 122 S. Ct. at 870. "It is enough to say that there must be proof of serious difficulty in controlling behavior." *Id.* We conclude that the required proof of lack of control, therefore, may be established by evidence of the individual's mental disorder and requisite level of dangerousness, which together distinguish a dangerous sexual offender who has serious difficulty controlling his or her behavior from a dangerous but typical recidivist.[13]

██

¶ 22. Wisconsin ch. 980 satisfies this due process requirement because the statute requires a nexus between the mental disorder and the individual's danger-

---

[13] Our interpretation of *Crane* is consistent with interpretations from other jurisdictions. *See People v. Ghilotti,* 44 P.3d 949 (Cal. 2002) (interpreting the link between mental disorder and dangerousness as satisfying *Crane* because the particular form of dangerousness, a mental disorder, not the particular degree of dangerousness, distinguishes individuals subject to commitment from the typical recidivist); *People v. Hancock,* 771 N.E.2d 459 (Ill.App.Ct. 2002) (interpreting *Crane* as not requiring a specific determination of lack of volitional control because the nature and severity of the mental disorder distinguish individuals subject to commitment from the typical recidivist); *In re Dutil,* 768 N.E.2d 1055 (Mass. 2002) (interpreting the sexually violent person commitment law as implicitly requiring a mental condition even if specific terms are not used and interpreting the "general lack of power to control" requirement as consistent with *Crane*); *but see Thomas v. Missouri,* 74 S.W.3d 789 (Mo. 2002) (interpreting *Crane* as requiring a jury instruction to include that the degree to which the person cannot control his or her behavior is serious difficulty).

ousness. Proof of this nexus necessarily and implicitly involves proof that the person's mental disorder involves serious difficulty for the person to control his or her behavior. The definition of a sexually violent person requires, in part, that the individual is "dangerous *because* he or she suffers from a *mental disorder* that *makes it substantially probable that the person will engage in acts of sexual violence."* Wis. Stat. § 980.01(7) (emphasis added). As we recognized in *Post,* these statutory requirements do not sweep too broadly. The nexus—linking a mental disorder with dangerousness by requiring that the mental disorder predispose the individual to engage in acts of sexual violence— narrowly tailors the scope of ch. 980 to those most dangerous sexual offenders whose mental condition predisposes them to re-offend.

██

¶ 23. We conclude that the same nexus between the mental disorder and the substantial probability that the person will engage in acts of sexual violence, necessarily and implicitly requires proof that the person's mental disorder involves serious difficulty for such person in controlling his or her behavior. It is settled law that "substantially probable" means "much more likely than not." *State v. Curiel,* 227 Wis. 2d 389, 406, 597 N.W.2d 697 (1999). Thus, proof that due to a mental disorder it is substantially probable that the person will engage in acts of sexual violence necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her sexually dangerous behavior. Chapter 980, therefore, satisfies due process requirements. Proof that a person is sexually violent necessarily and implicitly includes proof that the person's mental disorder includes serious difficulty in controlling his or her behavior, and this

requisite proof distinguishes a dangerous sexual offender who has serious difficulty controlling his or her behavior from a dangerous but typical recidivist. Chapter 980 is narrowly tailored to meet compelling state interests.

## IV

¶ 24. Laxton next argues that the jury instructions in his case[14] violate substantive due process because the instructions did not contain a requirement of proof that he has a mental disorder that involves serious difficulty for him in controlling his dangerous behavior. Laxton asserts that he was deprived of due process of law because the State did not prove, and the jury did not find, that he has a mental disorder involving serious difficulty for him in controlling his behavior.

¶ 25. The court of appeals rejected Laxton's arguments relating to the validity of the jury instructions because Laxton's counsel did not object to the final

---

[14] We recognize that after *Crane,* Wisconsin Jury Instruction-Criminal 2502 was revised to add language linking the mental disorder to the person's difficulty in controlling behavior. The revised jury instruction reads, in part:

> "Mental disorder" means a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior. . . . Not all persons with a mental disorder are predisposed to commit sexually violent offenses or have serious difficulty in controlling behavior.

Wis JI—Criminal 2502 (Special Release 2/2002) (footnotes omitted). The revised language was not used in Laxton's trial. Thus, we do not discuss the impact of the revised language, nor do we comment with either approval or disapproval of the revised language.

instruction.[15] Thus, under Wis. Stat. § 805.13(3)[16], the court of appeals concluded that Laxton waived his objection.

¶ 26. We, too, conclude that Laxton waived his objection to the jury instructions by failing to object to the final instructions at trial. Pursuant to our broad discretionary authority, however, we review, on the merits, Laxton's jury instruction argument regarding a requirement of proof of his lack of volitional control. *See State v. Perkins,* 2001 WI 46, ¶ 13, 243 Wis. 2d 141, 626 N.W.2d 762 (noting statutory authority and inherent authority to review a waived alleged error); *Apex Elecs. Corp. v. Gee,* 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998) (rule of waiver does not relate to appellate court jurisdiction and is not absolute). Laxton's argument is closely linked to the due process issue that we asked the parties to address in this case. We discussed Laxton's due process argument regarding the statutory requirements in Part III; thus, we now address Laxton's due process argument in the context of the jury instructions.

---

[15] We recognize that in the court of appeals, Laxton's argument was based on whether the jury was properly instructed regarding what constitutes acts of sexual violence. As noted, we agree with the court of appeals that Laxton waived his objections to the jury instructions. Nevertheless, we address the "acts of sexual violence" instruction in Part V of this opinion where Laxton argues for a discretionary reversal.

[16] Wisconsin Stat. § 805.13(3) states in relevant part: "Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."

¶ 27. We reject Laxton's argument that the circuit court's instructions to the jury denied him due process of law. We have already concluded that Wis. Stat. ch. 980 satisfies due process requirements because proof that a person is sexually violent necessarily and implicitly includes proof that the person's mental disorder involves serious difficulty in controlling his or her behavior. Here, the jury instructions virtually tracked the definitions of "mental disorder" and "sexually violent person" in Wis. Stat. § 980.01. The circuit court instructed the jury, in part:

> The second fact that must be established is that the respondent has a mental disorder. Mental disorder means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to engage in acts of sexual violence.
>
> . . . .
>
> The third fact that must be established is that the respondent is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence. A substantial probability means much more likely than not.

By concluding that Laxton has a mental disorder and that his mental disorder creates a substantial probability that he will engage in acts of sexual violence, the jury had to conclude that Laxton's mental disorder involved serious difficulty for him in controlling his behavior. This nexus between the mental disorder and the level of dangerousness distinguishes Laxton as a dangerous sexual offender who has serious difficulty controlling his behavior, from the dangerous but typical recidivist. We conclude, therefore, that the jury was

properly instructed and that the jury instructions did not violate substantive due process.

## V

¶ 28. Finally, Laxton argues that he is entitled to a new trial in order to remedy a miscarriage of justice. Laxton contends that the real controversy—whether he has a mental disorder that involves serious difficulty for him in controlling his dangerous sexual behavior—was not fully and fairly tried. Specifically, Laxton points to the court's instruction regarding "acts of sexual violence." The court instructed the jury, in part: "Acts of sexual violence means acts which constitute sexually violent offenses. Acts of window peeping or exposure of the penis, absent any other behavior toward another person, do not alone constitute sexually violent offenses under chapter 980." Laxton claims that this instruction is erroneous because the jury should have been instructed that acts of exhibitionism and voyeurism are not sexually violent. According to Laxton, "absent any other behavior toward another person" is an impermissibly vague jury instruction. Laxton therefore asks this court to exercise discretion under Wis. Stat. § 751.06[17] and grant a new trial.

---

[17] Wisconsin Stat. § 751.06 states:

Discretionary reversal. In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

¶ 29. We do not find Laxton's arguments persuasive. The circuit court is afforded great latitude when giving jury instructions. *State v. Pletz,* 2000 WI App 221, ¶ 17, 239 Wis. 2d 49, 619 N.W.2d 97. Only if the jury instructions, as a whole, misled the jury or communicated an incorrect statement of law will we reverse and order a new trial. *Fischer v. Ganju,* 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). "If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Id.* at 850. Laxton's complaint is based on one sentence in the jury instructions relating to acts of exhibitionism and voyeurism, and ignores the fact that the circuit court specifically instructed the jury: "Acts of sexual violence means acts which constitute sexually violent offenses." Furthermore, the instructions given were virtually identical to the Wisconsin pattern jury instruction, Wis JI—Criminal 2502. We conclude, therefore, that the overall meaning communicated by the instructions given in this case correctly stated the law regarding "acts of sexual violence" and "sexually violent offenses." The instructions did not mislead the jury or communicate an incorrect statement of the law. Accordingly, we decline to grant a new trial. The real controversy was fully and fairly tried.

## VI

¶ 30. In summary, we have concluded that civil commitment under Wis. Stat. ch. 980 does not require a separate factual finding that an individual's mental disorder involves serious difficulty for such person in controlling his or her behavior. The requisite proof of lack of control is established by proving the nexus between the person's mental disorder and dangerous-

ness. Specifically, we have concluded that proof that the person's mental disorder predisposes such individual to engage in acts of sexual violence and establishes a substantial probability that such person will again commit such acts, necessarily and implicitly includes proof that the person's mental disorder involves serious difficulty in controlling his or her behavior.

¶ 31. We further have concluded that at Laxton's trial the jury was properly instructed and that the jury instructions did not deprive Laxton of due process of law. The instructions were nearly identical to the statutory language in Wis. Stat. ch. 980, which we have concluded satisfies the requirements of due process. Accordingly, by concluding that Laxton has a mental disorder and that his mental disorder creates a substantial probability that he will again engage in acts of sexual violence, the jury necessarily and implicitly concluded that Laxton's mental disorder involved serious difficulty for him in controlling his behavior.

¶ 32. Finally, we have rejected Laxton's argument that the real controversy was not fully and fairly tried and, therefore, have declined to grant a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 33. DAVID T. PROSSER, J., did not participate.

¶ 34. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. Assuming chapter 980 is constitutional,[1] I conclude that the jury instruction in the present case is prejudicial error.

¶ 35. The State acknowledges, as it must, that this case is governed by *Kansas v. Crane,* in which the U.S. Supreme Court concluded that "there must be

---

[1] *State v. Rachel,* 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762, also released today.

209

proof of serious difficulty in controlling behavior."[2] The State concedes, therefore, that in order to commit a person under chapter 980, the State must prove beyond a reasonable doubt that the person has serious difficulty in controlling his or her behavior.

¶ 36. The majority opinion concludes that chapter 980 is constitutional because the statute implicitly requires the mental disorder to cause the individual serious difficulty in controlling behavior.[3] I accept that the majority can, if it wishes, apply a "saving construction" to the statute in this manner to render it constitutional.[4]

¶ 37. The issue before us then is whether the jury instructions in the present case correctly advised the jury that it must be persuaded beyond a reasonable doubt that Laxton had serious difficulty in controlling his behavior. The jury instructions do not explicitly state that the jury must be so persuaded. The jury instructions never use the phrase "has serious difficulty in controlling his behavior."

---

[2] *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 870 (2002).

[3] The majority opinion further concludes that the State met its burden of proof because "proof that due to a mental disorder it is substantially probable that the person will engage in acts of sexual violence necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her sexually dangerous behavior." Majority op. at ¶ 23.

I have reviewed the record. At least one witness gave expert testimony that Laxton had difficulty in controlling his behavior.

[4] *State v. Zarnke*, 224 Wis. 2d 116, 139, 589 N.W.2d 370 (1999); *State v. Hall*, 207 Wis. 2d 54, 82, 557 N.W.2d 778 (1997).

¶ 38. The jury instructions are set forth at ¶ 27 of the majority opinion. The jury was instructed in relevant part that it must determine the following:

> (A) whether Laxton has a mental disorder. "Mental disorder means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to engage in acts of sexual violence"; and

> (B) whether Laxton "is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence. A substantial probability means much more likely than not."

¶ 39. The majority opinion concludes, without explanation, that the jury instructions correctly instructed the jury. Essentially the majority opinion holds that "[b]y concluding that Laxton has a mental disorder and that his mental disorder creates a substantial probability that he will engage in acts of sexual violence, the jury had to conclude that Laxton's mental disorder involved serious difficulty for him in controlling his behavior." Majority op. at ¶ 27. Accordingly, the majority opinion concludes that the jury instructions are correct and do not violate substantive due process.

¶ 40. The majority opinion's linkage or nexus analysis of the jury instructions adopts Justice Scalia's dissenting view in *Crane*. According to Justice Scalia, "proof of serious difficulty in controlling behavior," as required by the *Crane* majority, is totally unnecessary because the "very existence of a mental abnormality or personality disorder that causes a likelihood of repeat

sexual violence in itself establishes the requisite 'difficulty if not impossibility' of control."[5]

¶ 41. The court is obliged to follow the majority opinion in *Crane,* not the dissent.

¶ 42. Rather than read into the jury instructions the constitutional gloss that the court has read into chapter 980, I apply the body of law the court has developed for reviewing alleged erroneous jury instructions.

¶ 43. Wisconsin case law instructs this court to review jury instructions with the following principles in mind: The validity of the jury determination depends on the correctness of the instructions. A proper jury instruction is a crucial component of the fact-finding process. A jury instruction must fully and fairly inform the jury of the principles of law it should apply. A court must consider the jury instructions as a whole. The test for determining the correctness of the jury instructions is to ask how a reasonable jury would interpret the instructions.[6]

¶ 44. I conclude that the jury instructions in the present case, when taken as a whole, did not inform a reasonable jury that it must determine whether Laxton had serious difficulty in controlling his behavior.

¶ 45. A statute is interpreted by lawyers, but jury instructions are directed to and interpreted by non-lawyer jurors. Thus, although lawyers and judges might read words or meaning into a statute to render the

---

[5] *Crane,* 122 S.Ct. at 874 (Scalia, J., dissenting).

[6] *See, e.g., State v. Perkins,* 2000 WI 46 ¶¶ 41–46, 243 Wis. 2d 141, 626 N.W.2d 762; *State v. Dodson,* 219 Wis. 2d 65, 87, 580 N.W.2d 181 (1998); *State v. Paulson,* 106 Wis. 2d 96, 108, 315 N.W.2d 350 (1982); *State v. Schulz,* 102 Wis. 2d 423, 426–427, 307 N.W.2d 151 (1981).

statute constitutional, reasonable non-lawyers serving on a jury might not read "a constitutionally required judicial gloss" into jury instructions that adhere to the original words of the statute now subject to the interpretive gloss. Although the words of chapter 980 might be interpreted by lawyers and judges to include a link between the mental disorder and a serious difficulty in controlling behavior, the jury instructions based directly on the language of chapter 980 do not set forth this link for non-lawyers.

¶ 46. To a jury, a mental disorder "affect[ing] an individual's emotional or volitional capacity," as the jury instruction states, does not equate to a mental disorder that causes serious difficulty in controlling behavior. To a jury, a "mental disorder that . . . predisposes the person to engage in acts of sexual violence," as the jury instruction states, means a tendency, a predilection, or a susceptibility to commit an act of sexual violence, not an interference with free will, not a "serious difficulty" in controlling behavior. To a jury, "a mental disorder which creates a substantial probability that he will engage in acts of sexual violence," as the jury instruction states, does not require the jury, as *Crane* directs, to "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."[7]

¶ 47. I conclude that the instruction misstates the law under *Crane,* misleads the jury, violates Laxton's substantive due process rights, and constitutes prejudicial error.[8]

---

[7] *Crane,* 122 S.Ct. at 870.

[8] *Brown v. Dibbell,* 227 Wis. 2d 28; 54, 595 N.W.2d 358 (1999); *Lemberger v. Koehring Co.,* 63 Wis. 2d 210, 225, 216 N.W.2d 542 (1974); *Bokelkamp v. Olson,* 254 Wis. 240, 244, 36 N.W.2d 93 (1949).

¶ 48. For the reasons set forth, I dissent.

¶ 49. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.