In re the Commitment of Steven J. Burgess:

State of Wisconsin, Petitioner-Respondent,

v.

Steven J. Burgess, Respondent-Appellant.†

Court of Appeals

*No. 00–3074. Submitted on briefs September 23, 2002.—Decided October 16, 2002.*

2002 WI App 264

(Also reported in 654 N.W.2d 81.)

† Petition to review granted 1-14-03.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, and *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Diane M. Welsh*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Steven Burgess appeals a judgment entered on a jury verdict finding him a sexually violent person and an order committing him to institutional care pursuant to WIS. STAT. ch. 980.[1] Burgess argues (1) the trial court had no jurisdiction to conduct the commitment proceedings because he is a Native American and he committed the underlying act on the reservation where he lived; (2) the commitment violated due process because there was insufficient evidence to support the jury's finding he was sexually violent; (3) the jury instructions did not reflect the law;

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

(4) he is entitled to a new trial because the real issues in his case were not fully and fairly tried; (5) the trial court should have granted him the same confidentiality given to persons being committed under WIS. STAT. ch. 51; and (6) recent changes to ch. 980 violate equal protection. We determine the trial court had jurisdiction to conduct Burgess's commitment proceeding and there is sufficient evidence to support the jury's verdict. Further, we conclude the jury instructions were proper in light of our supreme court's recent decision in *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784. We also determine Burgess is not entitled to a new trial and the trial court was not required to conduct confidential proceedings. Finally, we conclude the changes to ch. 980 do not violate equal protection based on *State v. Williams*, 2001 WI App 263, 249 Wis. 2d 1, 637 N.W.2d 791. Accordingly, we affirm the judgment and order.

## BACKGROUND

¶ 2. The State sought to commit Burgess pursuant to WIS. STAT. ch. 980 in November 1998. Burgess had been convicted of second-degree sexual assault stemming from an incident that occurred on the Lac du Flambeau Reservation in Vilas County. Burgess is a member of the Lac du Flambeau Band of the Lake Superior Chippewa and was living on the reservation at the time of the offense.

¶ 3. Burgess filed several pretrial motions. One requested dismissal on the WIS. STAT. § ch. 980 petition, contending the court did not have jurisdiction because Burgess was a member of a Native American tribe and committed the underlying act while on the reservation. The trial court determined it had jurisdiction based on Public Law 280 and case law regarding state jurisdiction over reservation Native Americans. Burgess also

requested the court close the proceedings and limit access to court records to the parties. The court also denied this motion because it could not find a legal basis to do so. Finally, Burgess requested a modification to the pattern jury instruction to reflect what he believed was constitutionally required by the United States Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997). The court, satisfied the instruction reflected the law, denied this motion as well.

¶ 4. At the August 2000 trial, the State presented the testimony of two psychologists, Linda Nauth and Sheila Fields. Nauth, a staff psychologist at Fox Lake Correctional Institution, conducted Burgess's "end of confinement" review to determine if the State should pursue a WIS. STAT. ch. 980 commitment. She diagnosed Burgess with pedophilia, alcohol dependence and anti-social personality disorder. She testified his pedophilia predisposed him to engage in acts of sexual violence and his alcohol dependence lowered his inhibitions and made it more difficult to control his pedophilic impulses. In addition, she explained Burgess's antisocial personality disorder further aggravated his pedophilia. To help her evaluate Burgess's risk of reoffense, she completed an actuarial test, the Rapid Risk Assessment of Sex Offender Recidivism (risk assessment). Nauth said Burgess's score showed he had an eighty percent chance of reconviction within ten years. She concluded Burgess's disorders, along with his score on the risk assessment, indicated a substantial probability that Burgess would engage in acts of sexual violence.

¶ 5. Fields, a psychologist for the state, testified similarly, saying Burgess's antisocial personality disorder and pedophilia made it substantially probable he would commit a sexually violent act. She performed a more thorough evaluation than Nauth, basing her

556

conclusion on numerous sources, including a review of Burgess's records, an interview with Burgess, and actuarial tests. Specifically, she testified Burgess's score on the risk assessment suggested a seventy-three percent chance of reconviction within ten years. She also said the revised Minnesota Sex Offender Screening Tool showed Burgess had a very high risk of reoffense. In addition, she determined Burgess scored in the sixty-seventh percentile on the Hare Psychopathy Checklist. Fields explained the Hare test was not an actuarial instrument, but rather measured a person's level of psychopathy. Burgess's score, according to Fields, was very high. Finally, Fields testified Burgess also measured as a high risk on two other actuarial instruments, the Violence Risk Appraisal Guide and the Static-99. Fields concluded these results, combined with Burgess's mental disorders, led her to believe Burgess had a high risk of reoffending.

¶ 6. On his cross-examination of Fields, Burgess's attorney attacked the reliability of the actuarial tests and their predictive ability. Fields admitted that simply because a person has pedophilia does not mean he or she is unable to control his or her behavior. In response to questions about Burgess's mental culpability, Fields said she believed Burgess knew the difference between right and wrong and was able to conform his conduct to the requirements of the law.

¶ 7. Burgess presented the testimony of a psychologist, Charles Lodl, and a therapist, Lloyd Sinclair. Lodl testified Burgess had several mental disorders that predispose him to acts of sexual violence, including pedophilia and antisocial personality disorder. However, Lodl determined Burgess had only a moderate risk level of committing future sexually violent acts, and did not meet Wis. Stat. ch. 980's "substantial probability" re-

quirement. Lodl based this decision on his use of the Static-99 actuarial test, which he said more accurately reflected Burgess's reoffense risk than some of the tests Fields and Nauth performed. Sinclair is a private therapist specializing in sex offender treatment who works as a consultant to the Department of Corrections. His testimony mostly recounted Burgess's treatment history while in prison. He concluded Burgess presented a moderate reoffense risk.

¶ 8. The jury found Burgess a sexually violent person and the trial court ordered commitment. Burgess appeals.[2]

## DISCUSSION

### 1. Jurisdiction

██

¶ 9. Burgess first argues the trial court erred when it determined it had jurisdiction over him. Burgess contends the State's jurisdiction in WIS. STAT. ch. 980 cases does not extend to Native Americans who are members of a tribe, residents of their tribe's reservation and who committed the underlying act on that reservation. Whether a court has jurisdiction presents an issue of law, which we review de novo. *State v. Webster*, 196 Wis. 2d 308, 316, 538 N.W.2d 810 (Ct. App. 1995). Prior

---

[2] By order dated December 4, 2001, we held Burgess's appeal in abeyance pending the United States Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407 (2002). *Crane* was decided on January 22, 2002. The next week, our supreme court granted a petition for review in *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, which had been held in abeyance pending *Crane*. We extended the abeyance pending the resolution of *Laxton*. The supreme court decided *Laxton* on July 1, 2002. The parties rebriefed the matter in its entirety.

to trial, the parties stipulated to Burgess's membership in the Lac du Flambeau Band of the Lake Superior Chippewa, his residence on the tribe's reservation, and the underlying act's occurrence on the reservation. Our only inquiry is whether the law governing state regulation of Native American affairs grants Wisconsin jurisdiction over ch. 980 proceedings involving Native Americans living on reservations. We conclude it does.

¶ 10. Before examining these laws, however, we first reject the State's argument that jurisdiction exists because Burgess was in a Wisconsin prison when the State filed the commitment petition. The State argues the commitment is based on Burgess's mental disorder and dangerousness and jurisdiction exists because that determination was made when Burgess was in the State's custody. We disagree.

¶ 11. The State's position is contrary to Wis. Stat. § 980.105, which establishes the procedures a court must follow to determine a person's residence for the purpose of a ch. 980 commitment. Section 980.105 provides:

> **Determination of county of residence.** The court shall determine a person's county of residence for the purposes of this chapter by doing all of the following:
>
> **(1)** The court shall consider residence as the voluntary concurrence of physical presence with intent to remain in a place of fixed habitation and shall consider physical presence as prima facie evidence of intent to remain.
>
> **(2)** The court shall apply the criteria for consideration of residence and physical presence under sub. (1) to the facts that existed on the date that the person committed the sexually violent offense that resulted in

the sentence, placement or commitment that was in effect when the petition was filed under s. 980.02.

¶ 12. According to Wɪs. Sᴛᴀᴛ. § 980.105, a person's county of residence shall be determined based on the facts that existed on the date of the underlying offense. Here, the parties stipulated that Burgess resided on the reservation when he committed the underlying offense and there is no suggestion Burgess intended to do anything but continue living on the reservation. As a result, the reservation should be considered his residence, and the trial court did not have jurisdiction merely because Burgess was in a Wisconsin prison at the time the petition was filed.

¶ 13. We now turn to Burgess's claim the court lacked jurisdiction because he is a Native American living on a reservation. Two related barriers exist to a state's exercise of jurisdiction over Native Americans on a reservation. First, federal law may preempt the exercise of authority. Second, jurisdiction may infringe on the right of Native Americans to establish and maintain tribal self-government. *County of Vilas v. Chapman*, 122 Wis. 2d 211, 214, 361 N.W.2d 699 (1985). Either barrier, standing alone, can be a sufficient basis for holding state law inapplicable to Native Americans on reservations. *Id.*

¶ 14. Burgess suggests both of these barriers prevent Wisconsin from exercising jurisdiction. He first criticizes the analysis used in *Chapman*, and relied upon by the trial court, to resolve the "tribal self-government" barrier to state jurisdiction. That analysis was based on *Rice v. Rehner*, 463 U.S. 713 (1983), which was the United States Supreme Court's most recent case concerning state jurisdiction over matters involv-

ing Native Americans at the time the supreme court decided *Chapman*. *See Chapman*, 122 Wis. 2d at 214. Burgess argues the *Rice* analysis was an aberration and was quickly abandoned by the Court in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209 (1987), and thus, Wisconsin's approach to Native American jurisdiction in terms of the "tradition of self-government" analysis is wrong.

■

¶ 15. Burgess is essentially asking us to review our supreme court's decisions in light of subsequent United States Supreme Court decisions. When we are presented with a United States Supreme Court decision regarding federal law that conflicts with an earlier decision of our own supreme court, we are required to adhere to the United States Supreme Court decision, even if it means deviating from our supreme court. *State v. Jennings*, 2002 WI 44, ¶¶ 3, 19, 252 Wis. 2d 228, 647 N.W.2d 142. We need not undertake this analysis, however, because we determine Public Law 280 grants Wisconsin jurisdiction over tribal Native Americans in WIS. STAT. ch. 980 proceedings.

■

¶ 16. Tribal sovereignty is dependent on and subordinate to only the Federal Government, not the states. *Cabazon*, 480 U.S. at 207. Congress may, however, grant states the right to apply their laws to Native Americans on reservations. *Id.* Congress has given several states, including Wisconsin, jurisdiction over criminal offenses and some civil causes involving Native Americans on reservations through Public Law 280, 18 U.S.C. § 1162, 28 U.S.C. § 1360. We must therefore determine whether WIS. STAT. ch. 980 is within the purview of Public Law 280. As indicated, we determine it is.

¶ 17. As noted, Public Law 280 grants Wisconsin jurisdiction over all criminal and some civil matters involving Native Americans living on reservations. WISCONSIN STAT. ch. 980 is not a criminal or punitive law. *State v. Carpenter*, 197 Wis. 2d 252, 271–72, 541 N.W.2d 105 (1995). In order for the state to exercise jurisdiction over ch. 980 petitions involving Native Americans, ch. 980 must fit within Public Law 280's grant of civil jurisdiction. Public Law 280 limits civil jurisdiction to:

> (a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State.

28 U.S.C. § 1360.

¶ 18. The primary grant of Public Law 280's civil jurisdiction is over private litigation involving reservation Native Americans in state court. *Bryan v. Itasca County*, 426 U.S. 378, 385 (1976). In *Bryan*, the Court said a fair reading of Public Law 280 was that it never intended "civil laws" to mean all state noncriminal laws, but rather those having to do with private rights, such as contract, tort, divorce, insanity, and descent. *Id.* at 384 n.10. Congress did not intend to include laws regarding taxation or granting franchises. *Id.* In *Cabazon*, the Court further described Public Law 280's civil jurisdiction by distinguishing civil laws as prohibitory or regulatory. *Cabazon*, 480 U.S. at 209–11. Although it

did not establish a bright-line rule, the Court held prohibitory civil laws are generally within Public Law 280 jurisdiction, while regulatory laws are not. *Id.* at 209. A statute is regulatory if the state generally allows the conduct subject to regulation. *See id.* A statute is prohibitory if the state does not generally allow the conduct. *See id.* Put another way, the question is whether the conduct in question violates the state's public policy. *Id.*; *see also State ex rel. Lykins v. Steinhorst*, 197 Wis. 2d 875, 886–88, 541 N.W.2d 234 (Ct. App. 1995) (citing and applying *Cabazon* prohibitory/regulatory distinction).

■■■

¶ 19. From this background, we determine Wis. Stat. ch. 980 falls under Public Law 280's grant of civil jurisdiction. Chapter. 980 seeks, in part, to prevent sexual violence through treatment. Sexual violence obviously violates public policy; the State does not permit it under any circumstances. Further, we note the *Bryan* Court's comment that Public Law 280 grants jurisdiction over insanity proceedings. *Bryan*, 426 U.S. at 384 n.10. While ch. 980 does not, strictly speaking, address insanity, it involves involuntary commitment based on mental disorders, much like insanity and other commitment proceedings. *See State v. Post*, 197 Wis. 2d 279, 318–19, 541 N.W.2d 115 (1995) (persons committed under ch. 980 and Wis. Stat. ch. 51 are similarly situated). The trial court correctly determined it had jurisdiction over the commitment proceeding.

¶ 20. Although Burgess offers some authority for the proposition that states lack jurisdiction over involuntary commitment proceedings involving Native Americans, we are not persuaded because none of it involves Public Law 280. For instance, in *White v. Califano*, 437 F. Supp. 543, 564 (D.S.D. 1977), *aff'd*, 581

F.2d 697 (8th Cir. 1978), the court determined South Dakota has no jurisdiction to involuntarily commit a Native American residing on a reservation. South Dakota does not have civil jurisdiction under Public Law 280. *See* 28 U.S.C. 1360. Burgess also relies on 70 Op. Atty. Gen. 219 (1981), where our attorney general opined Wisconsin, based on *Califano*, did not have the authority to involuntarily commit a member of the Menominee Tribe under Wɪs. Sᴛᴀᴛ. ch. 51. 70 Op. Att'y Gen. at 225. As the opinion points out, however, the Menominee were exempted from Public Law 280 in 1976. 70 Op. Att'y Gen. at 223. In his opinion, the attorney general specifically refused to address whether Public Law 280 grants jurisdiction under ch. 51. Burgess also points to attorney general opinions from Oregon, Arizona and North Dakota that say those states may not involuntarily commit Native Americans living on reservations. Public Law 280's civil jurisdiction does not apply to Arizona and North Dakota, and the Oregon opinion addressed the Warm Springs Indian Reservation, which is specifically excluded from Oregon's grant of 280 jurisdiction. *See* 28 U.S.C. § 1360. We conclude Wisconsin has jurisdiction over Wɪs. Sᴛᴀᴛ. ch. 980 proceedings involving Native Americans through Public Law 280.

## 2. *Insufficient evidence*

¶ 21. Burgess next argues his commitment violates due process because the evidence at trial was insufficient to establish a nexus between his mental disorder and his ability to control his behavior, as required by *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867 (2002), or between his disorder and the probability he would commit future sex crimes, as required by *Laxton*. Specifically, he points to testimony by the

State's experts that Burgess could conform his conduct to the requirements of the law. Burgess also attacks the expert's use of actuarial instruments in determining his likelihood to reoffend. We reject Burgess's arguments and conclude there was sufficient evidence for the jury to find him sexually violent.

¶ 22. In order to commit a person under WIS. STAT. ch. 980, the State must prove the person suffers from a mental disorder that makes it substantially probable the person will engage in acts of sexual violence. WIS. STAT. § 980.01(7). To comply with due process in committing a sexual offender, the State must demonstrate a nexus between the person's mental disorder and a serious difficulty in controlling his or her behavior. *Laxton*, 2002 WI 82 at ¶¶ 21–22 (citing *Crane*, 122 S.Ct. at 869). In *Laxton*, our supreme court determined ch. 980 complies with *Crane*'s due process requirements because ch. 980's nexus between the disorder and dangerousness necessarily and implicitly involves proof of the nexus between the disorder and difficulty in controlling behavior. *Laxton*, 2002 WI 82 at ¶ 22.

¶ 23. In determining whether the evidence in a WIS. STAT. ch. 980 commitment is sufficient to sustain the jury's verdict, we view the evidence in the light most favorable to commitment. *State v. Kienitz*, 227 Wis. 2d 423, 434, 597 N.W.2d 712 (1999). We will not overturn the verdict unless the evidence is so insufficient in probative value and force that no reasonable trier of fact could have found the person to be sexually violent beyond a reasonable doubt. *Id.* In addition, the jury is sole judge of credibility; it weighs the evidence and resolves any conflicts. *Id.* at 435.

¶ 24. Burgess first argues the jury reached an improper verdict because Fields and Lodl both testified he could control his behavior. While we agree Lodl said this, Burgess stretches Fields' testimony. On cross-examination, Burgess's counsel questioned Fields regarding her opinion whether Burgess could be held legally responsible for his future actions, that is, whether he would know right from wrong and could conform his conduct to the requirements of the law. *See* Wis. Stat. § 971.15. Fields testified she believed Burgess met these requirements. This testimony, Burgess argues, shows Fields believed he could control his behavior.

¶ 25. We do not agree. During direct examination, Fields said that based on her professional opinion, she believed Burgess was likely to commit future acts of sexual violence. In support, she offered her own report, based on interviews with Burgess and others, the nature of his mental disorders, records regarding his past treatment, and the actuarial instruments. This is the proper inquiry for a Wis. Stat. ch. 980 commitment. *Laxton* requires evidence of a nexus between Burgess's mental disorders and a substantial probability he will engage in acts of sexual violence. *Laxton*, 2002 WI 82 at ¶ 22. As noted, this nexus satisfies *Crane*'s requirement of a nexus between the disorder and difficulty in controlling behavior. *Laxton*, 2002 WI 82 at ¶¶ 21–22. Whether Burgess knows right from wrong or is able to conform his conduct to the requirements of the law addresses a wholly different legal question: whether Burgess could be not guilty by reason of mental disease or mental defect. *See* Wis. Stat. § 971.17. Chapter 980 does not preclude finding a person with a sexually-related mental disorder has difficulty in controlling his

or her behavior even if that person is able to conform his conduct to the requirements of the law.

¶ 26. Burgess also challenges the State's use of the actuarial instruments. Specifically, he contends the instruments are irrelevant because they only show the probability that he will reoffend, but not that the reoffense will be because of his mental disorder. Burgess argues the tests do not account for his mental disorder. He contends there is no other evidence suggesting he will reoffend due to his disorder and, therefore, the State did not meet its burden.

¶ 27. Our review of the record reveals sufficient evidence to allow the jury to infer Burgess would reoffend because of his mental disorder. Both of the State's experts concluded in their testimony and reports that Burgess was likely to commit sexually violent acts because of his pedophilia and antisocial disorder. Expert witnesses may testify to ultimate issues to be decided by the trier of fact. WIS. STAT. § 907.04. These opinions were not based merely on the actuarial instruments, but also on interviews with Burgess, his prior diagnoses and treatment records, and conversations with other professionals involved with Burgess's treatment history. Viewing the testimony in a light most favorable to upholding the commitment and allowing the jury to weigh the evidence and assess witness credibility, we determine a reasonable jury could have found Burgess sexually violent beyond a reasonable doubt.

*3. Jury instruction*

¶ 28. Burgess next argues the trial court erred when it refused to modify the pattern jury instruction

to clarify the nexus of Burgess's mental disorder and lack of control. Specifically, Burgess requested the court instruct the jury that it must find "That Steven J. Burgess suffers from a mental disorder which impairs his volitional control to the degree that he cannot control his dangerous behavior." Whether a jury instruction is an accurate statement of the law presents a question of law we review de novo. *See State v. Neumann*, 179 Wis. 2d 687, 699, 508 N.W.2d 54 (Ct. App. 1993).

¶ 29. Our resolution of this issue is controlled by *Laxton*. There, the supreme court rejected a challenge to the pattern instruction substantially the same as Burgess's. *Laxton*, 2002 WI 82 at ¶ 27. The court ruled because it had determined the due process-required nexus between the person's mental disorder and lack of control was implicit in the required by statute nexus between the disorder and dangerousness, and because the latter was reflected in the pattern instruction, the pattern instruction accurately reflected the law. *Id*. Burgess's challenge is the same as Laxton's and, therefore, the trial court properly instructed the jury.

*4. New trial in interest of justice*

¶ 30. Burgess next requests we exercise our discretion under WIS. STAT. § 752.35 and grant him a new trial in the interest of justice because the real issues were not fully tried. He claims the issues in question are (1) whether his mental disorders created a substantial probability he would reoffend and (2) whether his mental disorder made it seriously difficult for him to control his behavior. As noted in ¶ 22 *infra,* the second issue is implicit in the first. In addition, we have determined there is sufficient evidence supporting the

jury's verdict. Finally, the trial court properly instructed the jury on the law. The real issue has been fully tried to the jury.

*5. Closed proceeding*

¶ 31. Burgess also argues the trial court erred when it refused to close his commitment proceedings. The court determined it did not have any authority to do so. In addition to a statutory argument, Burgess argues equal protection requires confidential proceedings. Because persons committed under Wis. Stat. ch. 980 are similarly situated to persons committed under Wis. Stat ch. 51 and because a person being committed under ch. 51 can request closed proceedings and confidential records, Burgess contends a person being committed under ch. 980 must be able to make the same requests.

¶ 32. In support of his statutory claim, Burgess relies on *Post*, where the supreme court noted persons committed under Wis. Stat. ch. 980 are defined as "patients" under Wis. Stat. ch. 51. *Post*, 197 Wis. 2d at 313. Burgess argues this requires the trial court grant him all the rights granted to persons under ch. 51.

¶ 33. We read *Post* differently. The definition of "patient" in *Post* is found in Wis. Stat. § 51.61(1). *Id.* at 313–14. Section 51.61 addresses patient rights, and the definition of "patient" in § 51.61(1) limits its application to that section only. The right to closed court proceedings before commitment is not found in that section. *See* Wis. Stat. § 51.20(5) and (12). Burgess has all the rights found in § 51.61, which address a person's rights after commitment. Neither Wis. Stat. ch. 980 nor Wis. Stat. ch. 51 grant persons being committed under ch.

980 the right to request confidential proceedings. The trial court properly concluded it had no authority to close Burgess's commitment proceeding.

¶ 34. In addition, we determine the legislature's failure to afford these same rights to persons committed under WIS. STAT. chs. 980 and 51 does not violate equal protection. Equal protection does not require that all persons be dealt with identically, but does require that a distinction made have some relevance to the purpose for which the classification is made. *Williams*, 2001 WI App 263 at ¶ 11. In comparing ch. 980 to other involuntary commitment schemes, we apply a "strict scrutiny" standard without deciding that its application is required. *Id.* This standard requires the State prove the classification is necessary to promote a compelling government interest. *Id.* Burgess argues denying confidentiality does not advance ch. 980's goals of treatment and protection of the public. We disagree.

¶ 35. We determine there are compelling interests in affording closed hearings to persons committed under WIS. STAT. ch. 51, but not to those under WIS. STAT. ch. 980. These interests are the privacy of persons committed under ch. 51 and ch. 980's goal of protecting the public. Closed proceedings under ch. 51 advance the privacy interests of those being committed. The actions of persons committed under ch. 51 are often not criminal, not necessarily a matter of public record, nor always violent toward others. Persons undergoing ch. 980 commitments are convicted, violent sex offenders. The legislature has concluded sexually violent persons are more dangerous than those committed under ch. 51. *Williams*, 2001 WI App 263 at ¶ 13. By allowing open commitment proceedings, the legislature advances ch.

980's goal of protecting the public by allowing it access to information about dangerous persons. Equal protection does not require confidentiality for persons committed under ch. 980.

*6. Changes to WIS. STAT. ch. 980 violate equal protection*

¶ 36. Finally, Burgess argues the legislature's changes to WIS. STAT. ch. 980 in 1999 by Wis. Act 9 violate his right to equal protection. These changes require, among other things, that persons committed under ch. 980 be institutionalized and does not allow them to petition for release for at least eighteen months. He suggests this violates equal protection because persons committed under other procedures, such as WIS. STAT. ch. 51 or WIS. STAT. § 971.17, are not required to be institutionalized and, if they are, may petition for release sooner. ·

¶ 37. Burgess acknowledges we rejected the same argument in *Williams*. There, we concluded that although persons committed under WIS. STAT. ch. 980, WIS. STAT. ch. 51 and WIS. STAT. § 971.17 are similarly situated,[3] the more stringent standards of ch. 980 did not violate equal protection because the legislature concluded sexually violent persons, as a class, are more dangerous than those committed under ch. 51 or § 971.17. *Id.* at ¶¶ 10, 18, 20, 24. At the time he filed

---

[3] In *Williams*, we only assumed persons committed under WIS. STAT. § 971.17 and WIS. STAT. ch. 980 were similarly situated. *State v. Williams*, 2001 WI App 263, ¶¶ 10–11, 249 Wis. 2d 263, 637 N.W.2d 791. That persons committed under ch. 980 and ch. 51 are similarly situated was resolved by the supreme court in *State v. Post*, 197 Wis. 2d 279, 318–19, 541 N.W.2d 115 (1995).

his brief, however, the supreme court was still considering a petition for review in that case. Because the court has now declined review, we reject Burgess's equal protection claim based on *Williams*.

*By the Court.*—Judgment and order affirmed.