James Root, Plaintiff-Appellant,

v.

John T. Saul, Defendant-Respondent,

Blue Cross & Blue Shield United of Wisconsin,
Defendant,

Liberty Mutual Insurance Co.,
Intervenor-Defendant-Respondent.

Court of Appeals

*No. 2005AP562. Submitted on briefs March 7, 2006.
—Decided May 2, 2006.*

2006 WI App 106

(Also reported in 718 N.W.2d 197.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas E. Hayes* of Law Offices of *Thomas E. Hayes*, of Milwaukee.

On behalf of the defendant-respondent and intervenor-defendant-respondent, the cause was submitted on the brief of *W. Ted Tornehl* of *Borgelt, Powell, Peterson & Frauen, S.C.*, of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. James Root appeals from a judgment entered in favor of defendants John T. Saul, Blue Cross & Blue Shield United of Wisconsin and Liberty Mutual Insurance Co. (collectively, "Saul"). Root argues, as he did in a post-verdict motion, that he is entitled to a new trial in the interest of justice and based on the following errors: (1) the trial court denied Root's request to instruct the jury on provocation as a bar to a self-defense theory; and (2) the special verdict form was confusing. We conclude that the real controversy was not fully tried because the jury was not instructed that the privilege of self-defense may be lost where the person claiming the privilege was the initial aggressor when that person had not taken action to withdraw from the conflict and made that intent to withdraw known to the other party. Therefore, exercising our Wis. Stat. § 752.35 (2003–04) discretionary power of reversal, we reverse and remand for a new trial.[1] Having reversed on that basis, we decline to address whether alleged errors in

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

.

the special verdict form would also require reversal. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

## BACKGROUND

¶ 2. This is a personal injury case that arose out of a physical altercation that Root and Saul had during a football game party at a third man's house. According to trial testimony, six friends—Root, Saul and four other men—were watching a football game in the television room. Saul testified that he and Root sat next to each other and had "nice, friendly conversation on and off" during the first half of the game. However, when the second half started, Saul and Root had a disagreement over Root's cigar smoke.

¶ 3. Saul testified that he asked Root three times not to smoke his cigar in the room where they were watching the game. Then, according to Saul, Root exhaled a puff of smoke in Saul's direction. Saul changed seats, but the smoke from the cigar still bothered him. Saul said that after that "there were some words exchanged" between him and Root. Saul testified that he told Root to "shut up" numerous times and specifically told Root to "shut up" after Root made a comment about Saul's daughters. Eventually, Saul got up from his chair, walked to the back of Root's chair, watched Root "flailing his head back and forth like this with kind of a grin on his face" and Saul then slapped Root "across the cheek and the lips." Saul returned to his chair, which was located approximately six feet away.

¶ 4. Saul testified that he sat in his chair for "between a minute and two minutes" and that Root then quickly walked toward him. Saul stood up. Saul

said Root "either attempted to grab or push me with his right hand" and that "as soon as [Root's] finger tips brushed my shirt . . . I slapped his hand away." Saul said Root came back toward him and stumbled a little. Saul then put Root in a headlock. Saul testified: "The reason I put him in a headlock right away is because I felt, first of all, threatened or the possibility existed that something was going to happen to escalate it. And secondly, my thought was somebody is going to get hurt here and I tried to restrain him."

¶ 5. Although witness accounts differed, Saul claims that he and Root crashed into a table. Saul said he prevented them from falling. He denied choking or kicking Root. Saul admitted that after he stopped the two of them from falling, Root said something to the effect of "thanks a lot, I think you hurt my leg."

¶ 6. Root's testimony differed from Saul's in some respects. Root testified that when the two exchanged words, Saul was calling Root names, such as "idiot," "stupid," "loser" and others. Root said that when Saul kept calling him names, Root said Saul should "go home and take it out on your own kids." Root testified that Saul then walked behind Root, put his hands on Root's shoulders, rubbed his shoulders for about ten to fifteen seconds and said: "[C]ome on, Jim, just take it easy now. You know, everything is okay, just relax." Root said he "assumed everything was over" and that he was surprised when he was "smashed in the face with a fist" that he "never saw . . . coming." Root said that his head was knocked to one side and that his jaw was sore for a week as a result of the blow.

¶ 7. Root said that Saul then returned to his recliner, and Root, within half a minute, got up and walked toward Saul. Root said he again told Saul to "go home and take it out on your own kids" and that Root

369

never made a fist or threatened to strike Saul. Root did admit that he poked Saul in the chest. Root said Saul then "grabbed both of my wrists" and "forced me backwards into the living room." Root said he then noticed Saul's foot movement, saw a kicking motion and felt a "horrific impact on my right leg . . . my right leg just flew out from underneath me and I crashed down on my right shoulder on a table that was right there." Root testified that after the kick, Saul got Root in a headlock and "began crushing my throat with a choking motion" and did not release Root until fifteen seconds later, when the homeowner "pulled [Saul] off." Root stated that he returned to his chair and said "you just about broke my leg."

¶ 8. Root suffered a torn ligament in his knee, which required surgery. He sued Saul on two theories: battery and negligence. Root sought compensatory and punitive damages.

¶ 9. Prior to trial, the parties submitted proposed jury instructions. After the close of testimony, the parties and the trial court had a jury instruction conference, off the record. The next day, the parties made a record about the conference. According to that record, Root asked the trial court to give Wis JI— Criminal 815, discussing when the privilege of self-defense is not available to one who provokes an attack, and how to regain the privilege. The jury instruction provides:

### Provocation

You should also consider whether the defendant provoked the attack. A person who engages in unlawful conduct of a type likely to provoke others to attack, and who does provoke an attack, is not allowed to use or threaten force in self-defense against that attack.

[USE ANY OF THE FOLLOWING PARAGRAPHS THAT ARE SUPPORTED BY THE EVIDENCE.]

[However, if the attack which follows causes the person reasonably to believe that he is in imminent danger of death or great bodily harm, he may lawfully act in self-defense. But the person may not use or threaten force intended or likely to cause death or great bodily harm unless he reasonably believes he has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm.]

[A person who provokes an attack may regain the right to use or threaten force if the person in good faith withdraws from the fight and gives adequate notice of the withdrawal to his assailant.]

[A person who provokes an attack whether by lawful or unlawful conduct with intent to use such an attack as an excuse to cause death or great bodily harm to another person is not entitled to use or threaten force in self-defense.]

*Id.* (footnotes omitted).

¶ 10. The trial court refused to give the instruction, citing three reasons: (1) Root waived the right to submit the instruction because he failed to request the instruction as directed in the Scheduling Order; (2) it was a criminal jury instruction rather than a civil jury instruction; and (3) there was an insufficient factual basis in the record to warrant giving the instruction.

¶ 11. The jury was instructed and deliberated. Answering a series of questions in the special verdict, the jury found that Saul did not batter Root, and that Saul's actions were taken in self-defense.[2] The jury found that both Root and Saul acted negligently, with

_____

[2] Root argues that the fact the jury answered the question on self-defense after determining that there had been no

sixty-five percent of the negligence attributable to Root and thirty-five percent attributable to Saul.

¶ 12. Root filed a post-verdict motion seeking a new trial based on two alleged trial court errors: (1) failing to give Wis JI—Criminal 815; and (2) using an unfairly crafted special verdict form. Root also asked the trial court to invoke its discretionary power to order a new trial in the interest of justice pursuant to Wis. Stat. § 805.15(1). The trial court denied the motion and this appeal followed.

## DISCUSSION

¶ 13. A trial court "has broad discretion in deciding whether to give a particular jury instruction." *State v. Fonte*, 2005 WI 77, ¶ 9, 281 Wis. 2d 654, 698 N.W.2d 594. The trial court "must exercise its discretion to 'fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence.' " *Id.* (citation omitted). On appeal, we will reverse and order a new trial "[o]nly if the jury instructions, as a whole, misled the jury or communicated an incorrect statement of law . . . ." *State v. Laxton*, 2002 WI 82, ¶ 29, 254 Wis. 2d 185, 647 N.W.2d 784. " 'If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.' " *Id.* (citation omitted). We independently review whether a jury instruction is an accurate statement of the law applicable to the facts of

---

battery was evidence that the jury was confused. Because we are reversing based on our determination that the real controversy was not fully tried because a provocation jury instruction was not given, we do not consider the special verdict form or the logic of the jury's answers to individual questions.

a given case. *State v. Groth*, 2002 WI App 299, 8, 258 Wis. 2d 889, 655 N.W.2d 163.

¶ 14. Root argues that the trial court erroneously exercised its discretion because it refused to instruct the jury that when one provokes an attack, he cannot rely on self-defense as a defense to a personal injury claim. Root contends that where the undisputed facts show that Saul was the initial physical aggressor, the jury should have been instructed to consider "whether Root's actions, though minimal, were provoked by Saul" and whether this provocation should prohibit Saul "from asserting the privilege of self-defense."

¶ 15. As noted, when the trial court denied Root's request for WIS JI—CRIMINAL 815, it offered three reasons for denying the request: (1) Root waived the right to submit the instruction because he failed to request the instruction as directed in the Scheduling Order; (2) it was a criminal jury instruction rather than a civil jury instruction; and (3) there was an insufficient factual basis in the record to warrant giving the instruction. When Root filed a motion for a new trial based on the failure to give the instruction, the trial court reexamined its reasons and ultimately disavowed the first two.

¶ 16. Specifically, the trial court withdrew its ruling that Root had waived the right to request WIS JI—CRIMINAL 815, stating: "I hereby withdraw my previous ruling that the Plaintiff waived his objection . . . . I'm not going to base my decision on the principle of waiver." With respect to its initial decision that the jury instruction was inapplicable because this was a civil case, the trial court stated: "I do not recall giving that as a reason for refusing the instruction. If I did, I think that was mistaken, that's not a reason, and I withdraw

any such ruling. There is no question that [Wɪs JI—Cʀɪᴍɪɴᴀʟ] 815 accurately states the law."

¶ 17. Despite rejecting two of its previous reasons, the trial court reaffirmed its decision that there was no basis to instruct the jury using Wɪs JI—Cʀɪᴍɪɴᴀʟ 815, on grounds that the facts did not support it. In analyzing when the jury instruction should be used, the trial court considered the related criminal statute addressing self-defense, Wɪs. Sᴛᴀᴛ. § 939.48, which provides:

> **Self-defense and defense of others.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.
>
> **(2)** Provocation affects the privilege of self-defense as follows:
>
> (a) *A person who engages in unlawful conduct of a type likely to provoke others to attack him or her and thereby does provoke an attack is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing the person engaging in the unlawful conduct to reasonably believe that he or she is in imminent danger of death or great bodily harm.* In such a case, the person engaging in the unlawful conduct is privileged to act in self-defense, but the person is not privileged to resort to the use of force intended or likely to cause death to the person's assailant unless the person reasonably believes

374

he or she has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his or her assailant.

(Emphasis added.) The trial court found "that the conduct complained of, and I believe that I did it construing the evidence most favorable to the Plaintiff, was not such conduct." We interpret the trial court's statement as a finding that Saul's slapping Root's face was not "conduct of a type likely to provoke others to attack . . . ." *See id.*

### A. Waiver

¶ 18. In urging us to affirm, Saul argues that Root waived his right to request WIS JI—CRIMINAL 815 by not complying with a pre-trial scheduling order that required each party to include in its pre-trial report a list of proposed jury instructions. Whether Root was warned that failure to include a jury instruction would bar him from requesting it later is not clear from the record. What is clear is that the trial court, which had the best access to all the facts, ultimately found that Root had not waived his right to request a jury instruction. This finding is not clearly erroneous. Therefore, we reject Saul's invitation to rely on waiver as a basis to affirm the trial court's order denying Root's motion for a new trial.

### B. General applicability of WIS JI—CRIMINAL 815

¶ 19. Next, we consider whether WIS JI—CRIMINAL 815 can be used in a civil case. Selecting jury instructions is the trial court's role, *see State v. Sartin*, 200 Wis. 2d 47, 52–53, 546 N.W.2d 449 (1996), and the lack of a

pattern jury instruction for a particular case does not alter that role. Indeed, even where there is a pattern jury instruction, it remains the trial court's responsibility to properly instruct the jury, even if that means varying from the pattern jury instruction when "the situation envisioned by such instruction varies from the situation at issue." *See State v. Wolter,* 85 Wis. 2d 353, 370, 270 N.W.2d 230 (Ct. App. 1978).

¶ 20. Thus, the appropriate question is not whether there is an existing pattern jury instruction on provocation by the defendant for use in civil cases, but whether the general rule of law addressed by WIS JI—CRIMINAL 815 is applicable in civil cases. It is generally recognized in civil cases that a defendant who is an aggressor cannot justify an assault and battery "on the ground of self-defense, unless he in good faith withdrew from the aggression." *See* 6 AM. JUR. 2D *Assault and Battery* § 135 (1999); *see also Penn v. Henderson,* 146 P.2d 760, 766 (Or. 1944) (defendant who is aggressor cannot justify his actions on self-defense grounds "unless he in good faith first withdrew from such aggression"); *Juarez-Martinez v. Deans,* 424 S.E.2d 154, 158 (N.C. Ct. App. 1993) (examining both criminal and civil law because "the tort rules on self-defense are virtually identical to those of the criminal law," court held that " 'the right of self-defense is only available to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so.' ") (quoting *State v. Marsh,* 237 S.E.2d 745, 747 (N.C. 1977)).

¶ 21. *Nordmann v. International Follies, Inc.,* 250 S.E.2d 794 (Ga. Ct. App. 1978), applied this rule. The plaintiff was a patron at a nightclub. *Id.* at 796. As the

376

plaintiff left the club, an employee "confronted him as he was preparing to leave, called him and his companions 'punks,' and slapped him across the face." *Id.* The plaintiff responded by tackling the employee. *Id.* The employee then pulled out a gun and struck the plaintiff in the head with it, rendering him unconscious. *Id.* The plaintiff sued the employee, alleging the employee had committed a battery. *Id.* At trial, the employee successfully defended the claim based on self-defense. *Id.*

¶ 22. After a verdict was rendered for the defendant, the plaintiff appealed. *Id.* The Georgia Court of Appeals reversed on grounds that the jury had not been properly instructed. *Id.* at 797. Specifically, the court held that the jury should have been instructed consistent with the principle that

> "The doctrine of self-defense may not be successfully invoked, where defendant's own acts brought on the difficulty with plaintiff, as where defendant was the aggressor or was himself not free from fault. Before his right to self-defense will revive, one, who is at fault in bringing on the difficulty or in voluntarily entering into it, must retreat in good faith, intending to abandon it."

*Id.* (quoting 6A C.J.S. *Assault and Battery* § 19).

¶ 23. Wisconsin's appellate courts have not addressed application of this general rule. However, the supreme court in *Crotteau v. Karlgaard*, 48 Wis. 2d 245, 179 N.W.2d 797 (1970), did address a related issue: whether self-defense is available as an affirmative defense to one who was provoked by words. In *Crotteau*, two farmers—Crotteau and Karlgaard—had an argument when Karlgaard had difficulty driving his tractor. *Id.* at 246–47. Crotteau yelled at Karlgaard. *Id.* at 247. Karlgaard responded by shaking his finger and yelling an obscenity. *Id.* A short time later, the two men approached one another. *Id.* Crotteau pointed at his

own tractor and told Karlgaard, "if you want to drive the son of a bitch, go ahead and drive it." *Id.* Karlgaard then struck Crotteau in the jaw, injuring him. *Id.*

¶ 24. The trial court directed a verdict on liability against defendant Karlgaard. *Id.* at 247–48. The supreme court affirmed, concluding that where the plaintiff provokes an attack with words alone, a civil assault and battery is not justified. *Id.* at 250. The supreme court cited with approval 6 Am. Jur. 2d *Assault and Battery* § 161, for the proposition that "[b]efore self-defense can be used as a justification for a civil assault and battery it must reasonably appear that the defendant was in danger of bodily harm." *Crotteau*, 48 Wis. 2d at 249–50. The court further held that evidence that Crotteau provoked the attack could not be considered in mitigation of compensatory damages, but could properly be considered on the question of punitive damages. *Id.* at 250.

¶ 25. *Crotteau* is not directly on point here, because the instant case involves a slap (by Saul), followed by a poke (by Root), followed by kicking and a headlock (by Saul). No one argues that words alone provoked the physical altercation; at issue is whether the jury should have been instructed that it could find that Saul lost the right to assert a self-defense privilege when he began the physical altercation by slapping Root. Nonetheless, *Crotteau* is instructive because it recognized that provocation is an issue when considering self-defense, and because it looked to the general principles articulated in 6 Am. Jur. 2d *Assault and Battery* to determine the proper consideration of provocation under the facts presented.

¶ 26. Similarly, we have considered a variety of sources that discuss the applicable rule in civil cases

where a defendant who was the initial physical aggressor seeks to avoid liability based on self-defense. We conclude that the law in Wisconsin is consistent with this general rule: a defendant who is the initial aggressor can lose the right to claim self-defense, unless the defendant abandons the fight and gives notice to his adversary that he has done so. *See Juarez-Martinez*, 424 S.E.2d at 158.

¶ 27. We are not prepared to say that this rule is precisely the same as that articulated in WIS JI—CRIMINAL 815, which is based on WIS. STAT. § 939.48, the specific criminal statute that addresses self-defense. However, we recognize that the rules are similar.

### C. Whether the facts required an instruction on provocation

■

¶ 28. Having concluded that Wisconsin law provides that a civil defendant may lose his right to claim self-defense if he was the initial aggressor, the next question is whether the facts of this case justified a jury instruction that incorporated this rule. The trial court's ultimate reason for denying Saul's request for WIS JI—CRIMINAL 815 was that the facts did not support it. Specifically, the trial court found that the instruction was not applicable because Saul's conduct was not "of a type likely to provoke others to attack him . . . ." *See* WIS. STAT. § 939.48(2)(a). This finding is clearly erroneous. Root testified that Saul "smashed [him] in the face with a fist." Although Saul characterized it differently, he admitted that he slapped Root in the face. Intentionally slapping or hitting someone in the face—acts that can be a battery—is certainly conduct that can provoke others to attack. Under these facts, a jury could find that Saul was the initial physical aggressor. An instruc-

tion indicating that self-defense may not be available to Saul should have been given.

### D. Appropriate remedy

¶ 29. Because the trial court erroneously exercised its discretion when it declined to instruct the jury that Saul may have lost his right to claim self-defense, we must consider the appropriate remedy. Saul correctly notes that before we order a new trial based on erroneous jury instructions, we must find that the error affected the substantial rights of a party such that there is a reasonable possibility that the error contributed to the outcome. *See Nommensen v. American Cont'l Ins. Co* ., 2001 WI 112, ¶ 52, 246 Wis. 2d 132, 629 N.W.2d 301. However, we do have discretionary authority under WIS. STAT. § 752.35[3] to order a new trial if the real controversy has not been fully tried, and if we reverse on that theory, we need not determine whether the outcome of the trial would have been different on retrial. *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990).

¶ 30. In *Vollmer*, the supreme court recognized that its broad discretionary power pursuant to WIS.

---

[3] WISCONSIN STAT. § 752.35, provides:

**Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

STAT. § 751.06 was the same power granted to the court of appeals via WIS. STAT. § 752.35. *Vollmer*, 156 Wis. 2d at 19. *Vollmer* held that discretionary reversal could be exercised where a jury instruction "obfuscates the real issue or arguably caused the real issue not to be tried . . . ." *Id.* at 22. Similarly, in *Air Wisconsin, Inc. v. North Cent. Airlines, Inc.*, 98 Wis. 2d 301, 296 N.W.2d 749 (1980), the court concluded that discretionary reversal was appropriate where the use of an erroneous jury instruction prevented a "full, fair trial of the issues . . . ." *Id.* at 318. More recently, in *State v. Perkins*, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762, the court held that deficiencies in the jury instructions resulted in a controversy not being fully tried, therefore warranting a new trial. *Id.*, ¶ 49.

¶ 31. We conclude that in this case, a new trial is warranted because the jury was not instructed that Saul's self-defense theory may be unavailable if he was the initial aggressor. Without this instruction, the real controversy—whether Saul acted in self-defense when he injured Root—could not be tried. Therefore, we reverse and remand for a new trial. On retrial, the trial court should instruct the jury consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.