COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP786**

STATE OF WISCONSIN

Cir. Ct. No. 1992CF921156

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GRADY CORNELL CARSON,

DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Blanchard, Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Grady Cornell Carson appeals from two orders—one denying his motion for postconviction relief and one denying his motion for reconsideration—following his conviction for first-degree intentional homicide.[1] Carson argues that his postconviction counsel was ineffective for failing to raise the issue of trial counsel ineffectiveness because trial counsel failed to raise the affirmative defense of adequate provocation and failed to call Carson to testify. We affirm.

¶2 On March 26, 1992, Carson was charged with one count of felony murder and one count of armed robbery, both as a party to a crime. According to the criminal complaint, on December 30, 1991, Carson and a coactor followed two men, D.W. and Edwon Spears, and then Carson held them up at gunpoint and demanded their coats. Carson pointed a gun at Spears first. When Spears did not move, Carson shot him in the chest. Carson then pointed the gun at D.W. and made the same demand. D.W. removed his coat, Carson grabbed it and then ran away. Spears died from the gunshot wound.

¶3 The State moved to amend the information after Carson breached an agreement to testify against his coactor. The trial court granted the motion. The State subsequently charged Carson with one count of first-degree intentional homicide, one count of attempted armed robbery, and one count of armed robbery, all as a party to the crimes.

---

[1] The Honorable Robert W. Landry presided over Carson's trial. The Honorable Janet C. Protasiewicz denied Carson's motions for postconviction relief and reconsideration.

¶4      Carson pled guilty to the attempted armed robbery and the armed robbery charges, but proceeded to a bench trial on the first-degree intentional homicide charge.

¶5      At trial, trial counsel did not deny that Carson shot Spears and that Spears died as a result of the gunshot wound; rather, the crux of Carson's defense was that the evidence did not support the intent element of first-degree intentional homicide, namely, that Carson acted with intent to kill Spears. During his opening statement, trial counsel asked the trial court to consider the alternative verdicts of felony murder or first-degree reckless homicide.

¶6      Multiple witnesses testified at trial. Dr. James Henry, the medical examiner who performed Spears's autopsy, testified that Spears died as a result of a gun shot wound to the chest which caused perforations to multiple vital organs. Henry testified that Spears was about five feet and eight inches tall and weighed 251 pounds at the time of his death. Henry further testified that the bullet went directly through the left side of Spears's body, entering through the chest and exiting through the back, at approximately a forty-five degree angle. Henry testified that he did not know at what angle Spears was standing at the time he was shot. Henry admitted, however, that if Spears was bent at the waist at the time he was shot, the bullet's forty-five degree angularity would have been consistent with the position of Spears's body. Trial counsel implied that Spears was bent at the waist and that his hands were in fists at the time he was shot, possibly suggesting that Spears was about to hit Carson.

¶7      D.W. testified that he was with Spears at the time Spears was shot. D.W. stated that on the day of the shooting he was walking along Capital Drive with Spears when he heard "a click in a gun," and saw someone running towards

him and Spears. D.W. testified that the man—identified as Carson—stood about four to five feet away from Spears and told Spears to "[c]ome out of [his] coat[.]" Spears, who was standing up straight and had his arms at his side, "froze up," and approximately ten seconds later D.W. heard a gunshot and saw Spears fall to the ground. D.W. stated that Carson then pointed the gun towards him, instructed D.W. to take off his coat, and then ran away after "[s]natch[ing]" it from D.W.

¶8    Detective Michael Wesolowski testified that he investigated the shooting and arrested Carson that same night. Wesolowski testified that he took a statement from Carson, which Wesolowski proceeded to read to the trial court. As relevant to this appeal, Wesolowski read:

> [Carson] [s]tated [that he and his coactor] walked towards the two black males. Stated that he was holding the gun in his right hand and pointed it at the guy he shot wearing a Bulls jacket. Stated it was his intention to get the two jackets. Stated he said, off your coat and was about three feet away. Stated he took the safety off to try and show he was making a cocking type noise. Stated the victim had his fists curled up, curled like he was going to hit him. Stated he, Carson, jumped back, at which time he was afraid of getting hit so he pulled the trigger once and the gun fired striking the guy in the chest area…. Stated the second guy was taking off his coat and threw it at him and he caught it before it hit the ground. Stated he did not ask for this guy's coat; that he just gave it to him. Stated that he started to run.

Wesolowski testified that after taking Carson's statement, he read the statement back to Carson to ensure its accuracy. Carson signed the document.

¶9    After the State rested, trial counsel moved for a directed verdict on the ground that the State did not make a prima facie showing of first-degree intentional homicide. The trial court denied the motion. Trial counsel then told the trial court that Carson did not wish to testify. Trial counsel told the trial court

that he discussed the "pros and cons" of not testifying with Carson as well as the legal implications. Carson confirmed to the trial court that trial counsel discussed his options and that he did not wish to testify. The defense then rested.

¶10    During closing arguments, trial counsel argued that Carson did not intend to kill Spears and that this was "a classic case of felony murder[.]" Alternatively, trial counsel argued that the trial court should consider finding Carson guilty of first-degree reckless homicide. Trial counsel argued that "the physical evidence does not jibe with the State's presentation of the case," because the forty-five degree angle of the bullet wound suggested that Carson shot Spears in response to Spears's aggressive lunge towards Carson.

¶11    The trial court found Carson guilty of first-degree intentional homicide and sentenced Carson to life with parole eligibility after thirty years.

**Postconviction Proceedings**

¶12    Postconviction counsel was appointed for Carson, however no postconviction motion or direct appeal was ever filed. Twenty-six years later, through new counsel, Carson filed a postconviction motion pursuant to WIS. STAT. § 974.06 (2017-18)[2] seeking an order vacating his conviction, or, alternatively, for an evidentiary hearing. Carson argued that his postconviction counsel was ineffective for failing to raise the issue of trial counsel ineffectiveness on the basis that trial counsel failed to raise an affirmative defense of adequate provocation and failed to call Carson as a witness. Carson attached an affidavit averring that he

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

told trial counsel at the time of trial that: (1) he did not intend to kill Spears; (2) as Spears was taking his coat off, Spears lunged at Carson; (3) Carson jumped back and feared that Spears would take his gun; (4) Carson lost control and shot Spears once in the chest; (5) Spears was significantly larger than Carson and Carson was fearful of Spears in part because of Spears's size.

¶13     The postconviction court denied the motion without a hearing. In a written decision, the postconviction court stated that even without Carson's testimony, the trial court heard Carson's "version of the events through the testimony of [Wesolowski]." The postconviction court also stated that trial counsel "effectively used [evidence of the bullet's angulation] … to support the defendant's version of events and to challenge [D.W.'s] testimony that [Spears] had his hands at his sides and did not move before he was shot." As to Carson's argument that trial counsel, and subsequently postconviction counsel, failed to raise the issue of adequate provocation, the postconviction court stated that Spears's alleged movements resulted from Carson's own conduct. Thus Carson could not "legitimately argue that the victim's reciprocal provocation should mitigate his responsibility."

¶14     Carson filed a motion for reconsideration arguing that the postconviction court erred when it found that the facts of his case did not support an adequate provocation affirmative defense. Carson also argued that the postconviction court erred in determining that Carson "cannot initiate unlawful conduct and then argue that the victim's reciprocal provocation should mitigate his responsibility." The postconviction court denied the motion.

¶15     This appeal follows.

## DISCUSSION

¶16     On appeal, Carson argues that the postconviction court erroneously denied his motion because postconviction counsel was ineffective for "failing to raise the issue of trial counsel's ineffectiveness for failing to present the affirmative defense of adequate provocation[.]"  Carson also argues that the trial court erred in determining that he was not entitled to a mitigation defense.[3]

¶17     A postconviction court may deny a postconviction motion without a hearing when the motion does not raise sufficient facts to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief.  *State v. Bentley*, 201 Wis. 2d 303, 310-11, 548 N.W.2d 50 (1996).

¶18     When a claim of ineffective postconviction counsel is premised on the failure to raise ineffective assistance of trial counsel, the defendant must establish that trial counsel actually was ineffective.  *State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369.  Ineffective assistance of counsel requires the defendant to show that his or her attorney's performance was both deficient and prejudicial.  *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433.  Ineffective assistance claims present us with mixed questions of fact and law.  *See State v. Mayo*, 2007 WI 78, ¶32, 301 Wis. 2d 642, 734 N.W.2d 115. The trial court's findings of historical fact will be upheld unless clearly erroneous;

---

[3] Carson's postconviction motion and the "Statement of Issues" in his brief to this court argue postconviction counsel ineffectiveness; however, the body of his brief to this court does not address the issue of ineffective assistance of either counsel.  Because the postconviction court analyzed Carson's claims in the context of ineffective assistance of trial and postconviction counsel, we do the same.

whether those facts constitute a deficiency or amount to prejudice are determinations we review *de novo*. *See id.*

### Adequate Provocation

¶19 Adequate provocation is an affirmative defense to first-degree intentional homicide that mitigates the offense to second-degree intentional homicide. WIS. STAT. § 940.01(2)(a). The defense applies if "[d]eath was caused under the influence of adequate provocation as defined in [WIS. STAT. §] 939.44." *Id.* Adequate provocation is defined as follows:

> (a) "Adequate" means sufficient to cause complete lack of self-control in an ordinarily constituted person.
>
> (b) "Provocation" means something which the defendant reasonably believes the intended victim has done which causes the defendant to lack self-control completely at the time of causing death.

Sec. 939.44(1). "'Complete loss of self-control' is an extreme mental disturbance or emotional state. It is a state in which a person's ability to exercise judgment is overcome to the extent that the person acts uncontrollably. It is the highest degree of anger, rage, or exasperation." WIS JI—CRIMINAL 1012.

¶20 Adequate provocation includes both subjective and objective components. *State v. Felton*, 110 Wis. 2d 485, 508, 329 N.W.2d 161 (1983). As to the subjective component, the defendant must actually believe the provocation occurred, and the lack of self-control must be caused by the provocation. *See* WIS. STAT. § 939.44(1); *Felton*, 110 Wis. 2d at 508. As to the objective component, the provocation must be such that it would cause an ordinary, reasonable person to lack self-control completely, and the defendant's belief that the provocative acts occurred must be reasonable. *See* § 939.44(1); *Felton*, 110 Wis. 2d at 508.

8

Further, as the definition sets forth, the alleged provocation must originate with the victim.

¶21     Carson claims that trial counsel was ineffective for failing to call him to testify in support of an adequate provocation defense and for failing to advance the defense in general. Carson's arguments must fail.

¶22     First, Carson's argument ignores the fact that he validly waived his right to testify. Carson confirmed for the trial court that, after discussing the advantages and disadvantages of testifying with trial counsel, he chose not to testify. Thus, the record does not support Carson's argument that trial counsel was ineffective for failing to call Carson as a witness. Moreover, Carson's version of the incident was conveyed to the trial court in the form of Wesolowski's testimony. Wesolowski read Carson's statement to the trial court, in which Carson stated that Spears formed fists "like he was going to hit him" as Carson was pointing a gun at Spears. This included the portion of Carson's statement in which Carson said he jumped back, was afraid of getting hit, and fired the gun once.

¶23     Second, as the postconviction court noted, even if trial counsel had put forth an adequate provocation defense at trial, the defense would have failed. The postconviction court found that, under any version of events, Spears's actions could not have caused Carson to "lack self-control completely," either objectively or subjectively, because Carson initiated the unlawful conduct by attempting to rob Spears at gunpoint. A reasonable person would have expected that confronting an individual significantly larger in size would result in the sort of defensive action taken by Spears. Carson cannot initiate an armed robbery and then legitimately argue that Spears's reciprocal provocation should mitigate his culpability. *See State v. Schmidt*, 2012 WI App 113, ¶44, 344 Wis. 2d 336, 824

9

N.W.2d 839 ("If Schmidt acted in the heat of passion, it was because he deliberately chose to ignite the fire. Schmidt cannot incite a contentious argument and then legitimately argue that [the victim's] reciprocal provocation should mitigate his culpability."); ***Root v. Saul***, 2006 WI App 106, ¶26, 293 Wis. 2d 364, 718 N.W.2d 197 ("[A] defendant who is the initial aggressor can lose the right to claim self-defense, unless the defendant abandons the fight and gives notice to his adversary that he has done so."); WIS. STAT. § 939.48(2)(c) ("A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his or her assailant is not entitled to claim the privilege of self-defense."). Having determined that Carson's ineffective assistance of counsel claims are meritless, it follows that postconviction counsel cannot be ineffective for failing to raise claims of ineffective trial counsel. *See **Ziebart***, 268 Wis. 2d 468, ¶15.

**Mitigation Defense**

¶24 In Carson's motion for reconsideration to the postconviction court, Carson argued that he was entitled to the mitigation defense of imperfect self-defense.[4] We disagree.

---

[4] Carson did not raise this argument in his initial postconviction motion; rather, he raised this issue in his motion for reconsideration to the postconviction court. At one point in the motion, Carson seems to equate adequate provocation with imperfect self-defense. The postconviction court interpreted Carson's imperfect self-defense argument as a claim that trial counsel was ineffective for failing to raise the mitigation defense at trial, and that postconviction counsel was ineffective for failing to raise the issue of trial counsel ineffectiveness. On appeal, Carson does not appear to raise an imperfect self-defense argument in the context of ineffective assistance of counsel, but rather in the context of postconviction court error. We address the issue in the context of ineffective assistance of counsel, as was done by the postconviction court.

¶25  Imperfect self-defense applies when a defendant causes the death of another human being while exercising the privilege of self-defense. *See State v. Head*, 2002 WI 99, ¶¶69, 88-89, 255 Wis. 2d 194, 648 N.W.2d 413. This means that "a person intentionally caused a death but did so because [he or] she had an actual belief that [he or] she was in imminent danger of death or great bodily harm and an actual belief that the deadly force [he or] she used was necessary to defend [him or] her against this danger, if either of these beliefs was not reasonable." *Id.*, ¶69 (emphasis omitted).

¶26  As the postconviction court noted, the evidence in the record does not support Carson's contention that he was acting in self-defense. Carson pointed a gun at Spears and demanded his coat. Carson was standing less than five feet away from Spears when Carson held and fired the gun. According to D.W.'s testimony, Spears "froze" and did not make any movements towards Carson. And, as we have explained, even if the jury credited the account that Carson himself gave police, this would not amount to a self defense scenario. In short, Carson's contention that he shot Spears based on an actual belief that he was in imminent danger of death or great bodily harm is not supported by the record. As the postconviction court stated, "there is no evidence that the defendant abandoned his criminal purpose or demonstrated to the victim a desire not to continue the conflict." Accordingly, the record demonstrates that Carson is not entitled to relief on this claim. *See Bentley*, 201 Wis. 2d at 310-11. The postconviction court appropriately denied Carson's motion without a hearing by determining that neither trial counsel, nor subsequent postconviction counsel, were ineffective for failing to raise the issue of imperfect self-defense.

*By the Court.*—Orders affirmed.

11

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.